HAMLIN, Justice.
 

 Defendant appeals from a judgment of the trial court declaring him presently insane and incapable of understanding the nature of the charges against him and assisting counsel in his defense, and ordering him committed to the East Louisiana State Hospital, Jackson, Louisiana, subject to the further orders of said court.
 
 [1]
 

 In its reasons for judgment handed down, the trial court has accurately stated the facts in this case and correctly determined the issues involved, and we adopt its reasons as ours in disposing of this appeal, viz.:
 

 “The accused in this case Granville Yaun stands charged with the crime of murder. The indictment was returned by the Grand Jury of West Baton Rouge Parish on September 10, 1945 and charges that said accused did murder one Gladys Galloway Billingsley on or about June 2, 1945. This present proceeding is to determine the present sanity of said accused.
 

 “Following his indictment on September 10, 1945, said accused, on September 11, 1945, filed a plea of present insanity pursuant to which a lunacy commission was appointed to examine said accused and report to the court concerning his sanity. On October 26, 1945, said lunacy commission rendered its report to the effect that said accused was insane and unable to stand trial. Subsequently a hearing was held as a result of which judgment was rendered November 26, 1945, adjudging said accused presently insane and ordering him confined to East Louisiana State Hospital, Jackson, Louisiana, an institution for the .care of insane persons.
 

 
 *191
 
 “In conformity with the judgment finding him insane the accused was committed to the aforenamed institution and placed in the criminal colony thereof. On February 11, 1954, the Superintendent of East Louisiana State Hospital notified the court that the accused had regained his sanity. This development was followed by an order issued March 16, 1954, appointing another lunacy commission to examine said accused and report to the court as to his mental condition. Said lunacy commission filed its report April 17, 1954, which was to the effect that Yaun was presently insane. A hearing was held April 21, 1954 and resulted in said accused being again adjudged insane and ordered recommitted to East Louisiana State Hospital.
 

 “A third sanity hearing was requested by said accused on March 5, 1956. The
 
 court
 
 appointed a lunacy commission to examine said accused and fixed June 20, 1956, as the date for hearing said matter. After said hearing judgment was rendered October 25, 1956, adjudging said accused presently sane and ordering him to be tried for the crime of murder.
 

 “On February 4, 1957, said accused was tried for said alleged murder. The trial resulted in a mistrial following which the accused was remanded to jail to await retrial.
 

 “Before the accused could be tried a second time for said alleged offense the District Attorney, believing a change in the mental condition of the accused.had taken place, on December 19, 1957, moved the court to appoint a lunacy commission to examine said accused and to report to the court concerning his present mental condition. Pursuant to this application an order issued December 19, 1957, appointing a lunacy commission and fixing January 21, 1958, as the date for hearing [in] said matter. Subsequent to the scheduled hearing judgment was rendered March 26, 1958, declaring said accused Granville Yaun presently insane and ordering him recommitted to East Louisiana State Hospital.
 

 “The court assigned oral reasons for its judgment declaring the accused presently insane and reserved the right to file written reasons in support of its judgment in the event of appeal. In conformity with said reservation the following reasons are submitted in writing in support of said judgment: •
 

 “The hereinabove chronological history of this matter readily indicates that trial of said accused Granville Yaun has long been pending before this court. Four sanity hearings have been held, three at the instance of said accused and one on behalf of the State. Three times said accused has been adjudged insane and ordered committed to a mental institution and once he was adjudged sane and ordered to trial.
 

 “The matter now under consideration is the present sanity or insanity of said ac
 
 *193
 
 cuse'd Granville Yaun. The sole purpose of this present proceeding is to ascertain whether said accused is presently sane and able to stand trial on said charge of murder or whether he is presently insane and unable to understand the nature of the proceedings against him and assist counsel in his own defense and should therefore be recommitted to a mental institution until such time as he should regain his sanity.
 

 “A chronological narration of the medical history of this accused shows that he is presently approximately 34 years of age and that on October 6, 1937, when he was then 13 years of age, he was voluntarily committed to East Louisiana State Hospital by his family who obtained said order for commitfment from the 19th Judicial District Court in and for the Parish of East Baton Rouge, based upon the alleged consistent delinquency of said accused. At the time of his first commitment he was suffering from toxic psychosis induced by smoking marihuana cigarettes. Upon admission to the institution in 1937 his condition was diagnosed as psychopathic personality. The accused was furloughed from the institution on November 25, 1937, and discharged February 24, 1939. On May 23, 1942, he was readmitted to the hospital. Between his discharge in February 1939, and his readmission in May 1942, in a period of six months he entered and was discharged from the army, he committed numerous offenses and was readmitted to the hospital following a conviction for forgery and being sentenced to serve six months in jail. Said accused escaped from the institution June 14, 1942, and was discharged April 2, 1943, while on escape. On -September 22, 1944, the accused was admitted to the institution for the third time. The record indicates he had become addicted to alcohol and narcotics and had committed several acts of forgery resulting in his having been sentenced to the state penitentiary for a term of two years and his having been released from said penal institution. During the interval between April 2, 1943, and September 22, 1944, the accused received treatment in a private hospital in Covington, Louisiana, during which said hospitalization his condition was diagnosed by Dr. Roy Carl Young as basically a case of schizophrenia and which said diagnosis Dr. Young predicted would become more apparent with the passage of time. (See Letter of Dr. Roy Carl Young dated September 13, 1944 in hospital record).
 

 “Upon his third admission to East Louisiana State Hospital the accused’s condition was diagnosed as psychopathic personality on a schizoid background. (See report of Dr. C. E. Sturm dated September 27, 1944, in hospital record). On September 30, 1944, the accused again escaped from East Louisiana State Hospital and was returned October 3, 1944. He was furloughed March 22, 1945, and returned from furlough April 9, 1945. He escaped again on April
 
 *195
 
 30, 1945 and was returned to the institution May 2, 1945. The accused escaped again on May 20, 1945, and was furloughed May 24, 1945, The alleged offense for which said accused is held was committed June 2, 1945, nine days after his furlough from the mental hospital. As a result of numerous tests given the accused in the course of his long stay at East Louisiana State Hospital it has been determined that he possesses an I. Q. of 90.
 

 “The indictment in this case was returned September 10, 1945, following which, on September 11, 1945, counsel for the accused filed a plea of present insanity in which the following allegations were made:
 

 “ T.
 

 “ ‘That your movers are the attorneys for the above named accused, and, acting for and on behalf of the said accused, herein respectfully inform this Honorable Court that movers have been informed, and now have good reason to believe, that the said Granville Yaun, defendant, was not of sound mind and understanding, and was insane at the time of the commission of-the alleged offense; that, furthermore, the said Granville Yaun, defendant, has' been and is still insane or mentally defective to the extent that he is unable to understand the proceedings against-him, or to assist in his defense; and that -the said defendant, was, at -the time of the commission of the alleged crime, and is now, legally insane and absolutely legally irresponsible for his actions and conduct.
 

 ‘“2.
 

 “ ‘That movers are informed and believe that said defendant is afflicted with a sexual abnormality over which he has absolutely no control, which throughout his entire life prevented him completely and absolutely from distinguishing right from wrong in all matters of sexual nature; that the said defendant is also afflicted with other abnormalities over which he has absolutely no control and which throughout his entire life have prevented him completely and absolutely from distinguishing right from wrong; that the said defendant is presently completely demented and was so demented at the time of the commission of the alleged crime; that his insanity is readily distinguishable and recognizable, especially by experts in mental diseases.
 

 “ ‘3.
 

 “ ‘That due" to his insanity, the said defendant has previously been committed to institutions for the insane, and was under commitment to the East Louisiana State Hospital in Jackson, Louisiana, at the time of the commission of the alleged offense’.
 

 
 *197
 
 “Predicated upon the hereinabove quoted allegations regarding the insanity of the accused a sanity hearing was held and resulted in said accused being adjudged ■criminally insane and committing him to the mental hospital.
 

 “The accused’s record during his commitiment to East Louisiana State Hospital reveals that on August 28, 1952, at the request of his own attorney, the accused was presented to the hospital staff to determine his condition and was found by the staff to be sane and able to stand trial. However, on September 18, 1952, less than one month later, said accused was again presented to the staff, which included Drs. Sturm and Kirkpatrick, both of whom testified as witnesses in the present sanity hearing, and it was then found that a change had occurred in the condition of said accused as a result of which the staff concluded the accused was unable to stand trial and recommended further' hospitalization instead. See Reports of Staff Meetings of August 28, and September 18, 1952 in the hospital record.
 

 “The report of the lunacy commission appointed for the present sanity hearing is herewith set forth in full as follows:
 

 “ ‘State of Louisiana
 

 ■ Vs. No. 3395
 

 Granville Yaun
 

 The State of Louisiana
 

 18th Judicial District Court
 

 Parish of West Baton Rouge
 

 “ ‘January 15, 1958
 

 “ ‘The Plonorable Paul B. Landry, Jr., Judge Division “B”, 18th Judicial District, Parish of West Baton Rouge, Port Allen, Louisiana.
 

 “ ‘Honorable Sir:
 

 “ ‘Pursuant to your order of December 19, 1957, we submit the following report on the mental condition of Granville Yaun. We have examined Granville Yaun on several occasions and our conclusions are the result of our observation as well as upon the report of the hospital personnel. In coming to our conclusions, we have also taken into account the previous record of Granville Yaun at the East Louisiana State Hospital, and reports of other psychiatrists in the past.
 

 “ ‘During the period of our observation, we found Granville Yaun to be suffering from a mental and emotional disturbance. He displays an inadequate emotional response to the circumstances under which he finds himself. His behavior is inappropriate and inconsistent. Despite evident attempts to create an impression of mental stability, he has, nevertheless, presented a disturbance in our hospital ward.
 

 “ ‘It is our conclusion, accordingly, that Granville Yaun is suffering from a chronic schizophrenic psychosis.
 

 
 *199
 
 This is of such a nature as to render him unable to adequately understand the -nature of the proceedings brought against him and to assist his counsel in his defense.
 

 “ ‘Respectfully submitted
 

 “ ‘John L. Simon
 

 “ ‘John L. Simon, M. D.
 

 “ ‘Paul B. Landry M. D.
 

 “ ‘Paul B. Landry M. D.’
 

 “The question presented for determination is patently of a grave and serious nature. For obvious reasons the intent of the law is that an insane person or a person incapable of understanding the nature of the proceedings against him and assisting his counsel in his defense should not be tried for crime. On the other hand, those who are able to understand and assist counsel, must be tried for their offenses.
 

 “The test of present sanity as regards mental competency to be tried on criminal charges, is set forth in Title IS Section 267 [LSA-] R.S. (Code of Criminal Procedure) and is to the effect that a person who is able to understand the nature of the proceedings against him and assist in his defense is sane and can be tried for a criminal act.
 

 “So far as this court is aware there is no decision in the jurisprudence of this state specifically interpreting the phrase ‘capable of understanding the nature of the proceedings against him and assisting in his own defense’. In other words the question of what degree of ability to understand and assist in one’s own defense an individual charged with crime must possess in order to be adjudged sane and able to stand trial, has never been established by the courts of this state. Should a person possessing any ability whatsover to understand and assist in his defense be declared sane? On the other hand, should a person be declared insane only if he is totally devoid of ability to understand the nature of the proceedings against him and assist in his defense? Adoption of either of the foregoing extremes as the criterion of' sanity or insanity would obviously lead to harsh conclusions.
 

 “The following language found in State v. Swails, 223 La. 751, 66 So.2d 796, is believed pertinent to the issue under consideration :
 

 “ ‘The test of present insanity, which will prevent a trial in a criminal action is whether the person is mentally competent to make a
 
 rational defense.
 
 And the question is whether the accused was sane enough to present to counsel the facts which ought to be stated and presented to the jury upon his trial. The knowledge of right and wrong as a test of insanity does not apply to a collateral proceeding to ascertain the mental capacity of the person about to be put on trial for a criminal act. A person who is ar
 
 *201
 
 raigned for crime, however, who is capable of understanding the nature and object of the proceeding against him, and who comprehends his own condition in reference- to it,
 
 and can conduct his defense in a rational manner,
 
 is to be deemed sane for the purpose of being tried, although on some other subjects his mind may be unsound’. Italics by the Court.
 

 “This court is in agreement with the foregoing pronouncements in the Swails case, supra, and a person accused of crime is not sane in legal contemplation unless he is able to understand the nature of the proceedings against him and assist in his defense in a rational manner and to a rational degree. Possession of any degree of ability to understand and assist less than rational would subject an accused to a disadvantage of such magnitude as to deprive him of his rights and liberty without due process of law.
 

 “What constitutes ability to understand and assist must of necessity be determined by a careful consideration of all the facts and circumstances in each particular case. This Court knows of no arbitrary criterion by which the degree of sanity or capacity of any particular human mind may be established with reasonable certainty. The Court can only consider the evidence introduced in this case bearing upon the present sanity or insanity of this particular accused and determine therefrom whether, in the light of all the circumstances, this particular accused is able to understand the nature of the proceedings against him and render rational assistance to counsel in his own defense.
 

 “Dr. John L. Simon, member of the present lunacy commission, a psychiatrist recognized as such by the American Board of Psychiatry, and who has been employed as a psychiatrist at East Louisiana State Hospital for several years, testified that since his employment at the hospital he has come in contact with the accused on numerous occasions. In compliance with the order appointing him to the lunacy commission he examined the accused and predicated upon his examination and consideration of the medical history of said accused he concluded that the accused is suffering from chronic schizophrenic psychosis which he defined as a long time illness characterized by hallucinations, delusions and emotional distress. According to Dr. Simon a schizophrenic is emotionally unstable, his emotions are blunted and often inappropriate and inadequate for the circumstances, his conduct is unpredictable and he very often engages in self-defeating actions. Dr. Simon frankly stated that in the instant [case] the accused, within the limits of his capabilities, was obviously attempting to create an impression of sanity but despite this evident attempt the accused engaged in certain self-defeating actions
 
 *203
 
 which, in the opinion of Dr. Simon, proved the insanity of the accused. In this connection Dr. Simon listed several self-defeating actions of the accused principally that of the occasion upon which the accused created a disturbance at East Louisiana State Hospital while he was there for observation by Dr. Simon in connection with this hearing. Dr. Simon testified that considering the long history of mental disturbances experienced by the accused and the recent conduct and self-defeating actions engaged in by said accused, his opinion is that the emotions of the accused are so blunted that the accused cannot adequately and appropriately understand the nature of the proceedings against him and could not rationally assist counsel in his own defense. In short Dr. Simon was of the opinion that the accused is presently insane and his diagnosis of the accused’s condition was that the accused is suffering from chronic schizophrenic psychosis.
 

 “Dr. Cherie E. Major, Medical Director, East Louisiana State Hospital, testified he is a practicing physician and has been employed at the hospital since July, 1953, except for tlie period July, 1955, to July, 1956, during which time he was on leave for further training. In his employment at the hospital Dr. Major frequently came in contact with the accused. He treated the accused for a tubercular condition in ' 1953 and stated that said condition was now arrested or in a dormant state. From December 26, 1957, until January 15, 1958, during which period the accused was at East Louisiana State Hospital for observation, Dr. Major saw the accused almost daily. The testimony of Dr. Major is substantially the same as that of Dr. Simon in that Dr. Major was of the opinion that the accused is afflicted with chronic schizophrenic psychosis to the extent that his emotional responses have become so blunted that the accused is incapable of understanding his circumstances and his present environment. Dr. Major further testified the accused has had episodes of psychosis in that the accused secured narcotics while at the institution and on another occasion the accused secured and secreted hack saw blades for the purpose of taking them into the criminal colony at the institution, the accused being then held in said criminal colony as a criminally insane person. Dr. Major also testified that the accused was making a shallow attempt to prove his present sanity but that in fact the accused is insane and unable to understand the nature of the proceedings against him and assist in his defense.
 

 “Dr. Paul B. Landry, Coroner, West Baton Rouge Parish, the second member of the present lunacy commission also testified that he believed the accused to be presently insane and his diagnosis was that' the accused is suffering from chronic schizophrenic psychosis. Dr. Landry predicated his diagnosis upon the unfavorable
 
 *205
 
 medical record of the accused, his numerous committments and escapes and his several infractions of the law. He agreed with Drs. Simon and Major that the accused is insane and unable to understand the nature of the proceedings against him and assist in his defense.
 

 “Dr. William L. Kirkpatrick, testified that he has specialized in psychiatry for a number of years and although he is ‘board eligible’ he has not been recognized as a psychiatrist by the American Board of Psychiatry. He stated he was employed at East Louisiana State Hospital from 1952 until 1955 during which period he came in contact with the accused. Dr. Kirkpatrick described the condition of the accused as that of a sociopath or psychopathic personality without psychosis, anti-social type. According to Dr. Kirkpatrick a psychopathic personality has a tendency to be a pathological liar and is maladjusted and unable to learn from his experiences hut is nevertheless a person capable of understanding the nature of a criminal charge against him and assisting counsel in his defense within the limits of his particular mental capacity. Dr. Kirkpatrick admitted that the accused in' this case is not able to understand the nature of the proceedings against him and assist counsel in his own defense to the extent that an ordinary or normal person could. He further conceded that the accused is not a normal person in the regularly accepted sense but he felt that the accused could nevertheless understand the nature of the proceedings against him and assist counsel in his defense to a reasonable degree. Dr. Kirkpatrick explained that a pathological liar, such as psychopathic personalities are prone to be, is a person who would lie even though the truth might be more to his own interest and advantage. He also stated that he noticed no material change in the condition of the accused since 1952 when he first became acquainted with the accused as a member of the staff of East Louisiana State Hospital. He admitted being on the hospital staff on August 28, 1952, when the accused was reported to be sane and able to stand trial and further admitted that he was on the staff 20 days later on September 18, 1952, on which date the staff found that the condition of the accused had changed to the extent the accused was no longer able to appear in court. Dr. Kirkpatrick would not concede that any of the numerous acts and emotional outbursts of the accused amounted to an episode of psychosis. He did concede, however, that conduct which in the opinion of one psychiatrist amounted only to an emotional outburst on the part of a psychopathic personality, might also be logically classified by another psychiatrist as an episode of psychosis in a schizophrenic. He further stated that conduct constituting an emotional outburst on the part of a sociopath is differentiated from an episode of psychosis only by evaluation of the degree
 
 *207
 
 thereof and that a psychiatrist witnessing the incident would be in a better position to evaluate the degree thereof than a psychiatrist who did not witness the occurrence.
 

 “Dr. C. E. Sturm, who has been employed at East Louisiana State Hospital since 1944, testified he has known the accused since 1945 when the accused was committed to said institution following the indictment of the accused
 
 on
 
 the charge of murder presently pending against said accused. On direct examination by counsel for the defense, Dr. Sturm testified he has never known the accused to be psychotic and has never diagnosed the condition of the accused as schizophrenia. On cross examination Dr. Sturm was confronted with a letter dated September 27, 1944, in which he diagnosed the condition of the accused as psychopathic personality on a schizoid background, and conceded that if he stated this diagnosis he could only say that said diagnosis was what he believed at the time of writing the letter. In the opinion of Dr. Sturm the accused is not a schizophrenic. Dr. Sturm is of the further opinion that the accused is able to understand the nature of the proceedings against him and assist counsel in his defense. On cross-examination Dr. Sturm was asked if he were presented with evidence to the effect that approximately one week before this sanity hearing the accused had summoned an official to his jail cell and offered to plead guilty to the offense of murder although professing his innocence of such crime, would Dr. Sturm alter his diagnosis of the accused and Dr. Sturm replied that if presented with such evidence he would change his diagnosis of the accused. In this connection it is desired to point out that it is established by the testimony of Mr. F. C. Claiborne, District Attorney, and Mr. Bob Rogers, newspaper reporter that approximately one week before this present hearing the accused summoned Mr. Claiborne to his cell and after professing his innocence of the crime offered to plead guilty thereto.
 

 “Dr. Gene L. Usdin, a recognized psychiatrist of many years experience, testified he considers the accused a psychopathic personality without psychosis and not a schizophrenic. He conceded that some psychiatrists consider constitutional psychopaths to be insane and the difference between a a constitutional psychopath and a schizophrenic is a matter of degree only. He admitted the accused is a pathological liar and testified quite frankly that the accused had even lied to him after the accused was fully informed that Dr. Usdin had been employed by the family of the accused to examine him for the purpose of testifying at this hearing. Dr. Usdin stated he found no evidence of present psychosis and from the medical record could not conclude the accused was ever psychotic. Dr. Usdin testified he divided constitutional psychopaths
 
 *209
 
 into four categories graded according to the severity of symptoms. In type one he places the mild cases in which the individual can function in society and may not be recognized by non-psychiatrists as an inadequately adjusted person. In type two he places those with a severe enough background to get into difficulties with the law and those who become alcoholics and drug addicts. In type three he places those cases that are quite advanced such as those who constantly get into trouble with the law. In type four he places the hardened criminal. Dr. Usdin classified the accused as being in type three and conceded that in his entire experience he has never encountered a sane individual falling into class four. Dr. Usdin confirmed the testimony of Dr. Simon and Dr. Major to the effect that the accused is presently making an obvious effort to appear sane. He felt that despite the acknowledged tendency of the accused to lie, said accused is able to understand the nature of the proceedings against him and assist in his defense. He frankly stated that the accused was not capable of assisting counsel as a normal person could but that in his opinion the accused could render reasonable assistance.
 

 “Dr. L. F. Magruder, a practicing psychiatrist of many years experience, but not recognized as such by the American Board of Psychiatry, testified that he was superintendent of East Louisiana State Hospital from April, 1949, to'August, 1952, during which time he came to know the accused. His diagnosis of the accused is that of constitutional psychopath or sociopath. He conceded the accused could not assist counsel to the extent an ordinary individual could but like Dr. Usdin felt the accused could render reasonable assistance. He also testified there has been no material difference in the condition of the accused since he first became acquainted with said accused in 1949.
 

 “In addition to the foregoing medical witnesses numerous lay witnesses were called on behalf of the accused most of whom testified substantially to the effect that they considered the accused sane. One lay witness, Don Havard, an attendant at East Louisiana State Hospital, testified that while the accused was in the hospital for observation in December, 1957, the accused created a disturbance to such extent that the witness requested and was given permission to restrain the accused by placing the accused in cuffs. Havard testified that on this occasion the accused appeared to him to be ‘off’.
 

 “This court is of the opinion that the diagnosis of schizophrenia found by Drs. Simon, Major and Landry are consistent and compatible with the long history of mental disturbances with which this accused has been afflicted throughout his entire life. His own voluntary plea of present insanity entered immediately after his indictment and the allegations of hopeless
 
 *211
 
 insanity therein made and confirmed by his prior and subsequent actions are sad testimonials to his unfortunate condition.
 

 “The voluntary civil commitments of the accused, his numerous escapes from the institution, his derelictions while confined to the mental hospital, his being an acknowledged pathological liar and his recent self-defeating actions in the face of a recognized effort to create an impression of present sanity indicate to this court that the mental stability of said accused is such that he cannot understand the nature of the proceedings against him and render rational assistance to counsel in his own defense.
 

 “Counsel for the accused seeks to compare the instant case with that of State v. Chinn, 229 La. 984, 87 So.2d 315, which held to the effect that low mentality is not synonymous with insanity. Counsel further argues that the accused found sane in the Chinn case possessed a lower I. Q. than the present defendant and therefore the accused in the instant case should be declared sane.
 

 “The facts of the Chinn case are neither analogous nor applicable to the case presently under consideration. The Chinn case dealt with a case of a limited or deficient mentality whereas the instant case is concerned with that of a defective or depraved mentality. In the Chinn case the court found that although the-accused was of a low mentality he was nevertheless sane and able to understánd the nature of the proceedings against him and assist counsel in his defense. In the instant case Yaun’s mental condition is not that of a low or deficient mentality but a mental defect, namely, schizophrenia, which has progressed to the point that he is unable to understand the nature of the proceedings against him or rationally assist counsel in his defense.”
 

 Counsel for defendant has urged that, since written reasons for judgment were not assigned by the trial judge on March 26, 1958 (the date of the rendition and signing of the judgment appealed from), the written reasons for judgment, signed April 7, 1958 and filed in the record on that date, comes too late; that this court cannot consider any “per curiaros” of the district judge which may have been filed after the appeal, had been taken on April 3, 1958, citing State v. Dowdy, 217 La. 773, 47 So.2d 496.
 

 We find no merit to counsel’s contention. State v. Dowdy, supra, was tried before a jury, and this Court held that a
 
 per curiam
 
 of a trial judge filed after an appeal has been taken cannot he considered under Article 545 of the Code of Criminal Procedure (LSA-R.S. 15:545), which -prescribes that “after an appeal has been granted no further action in the case can be taken by the trial judge; provided, that as to ministerial matters or matters
 
 *213
 
 not in controversy on appeal, the trial court may render interlocutory orders and definitive judgments.”
 

 Since the judgment in the instant case is an
 
 appealable final judgment,
 

 [2]
 

 and the trial judge reserved the right to file
 
 written reasons
 
 in support of his
 
 judgment,
 
 we hold that his action was a ministerial matter not in controversy on appeal.
 

 Further, the minutes of the lower court of March 26, 1958, contain the following:
 

 “In Open Court it was agreed by counsel for the State and counsel for the accused that the court’s decision is appealable and no objection to an appeal by the accused will be made by the State.”
 

 The trial judge is vested with the discretion to determine when there are reasonable grounds to believe that a defendant is presently insane; this discretion is a judicial one, and if the judge abuses such discretion in an arbitrary manner, his error in so doing will be corrected on appeal. State v. Gunter, 208 La. 694, 23 So.2d 305; State v. Green, 221 La. 713, 60 So.2d 208; State v. Ridgway, 178 La. 606, 152 So. 306. We have carefully considered the evidence and exhibits on file and fail to find -where the trial judge has abused his discretion or acted in an arbitrary manner.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 [1]
 

 . Judgment adjudicating a defendant, charged with crime of forgery, presently insane and committing him to hospital for ' insane until restored to sanity held appealable “final judgment” since it ■ disposed of only issue in proceeding relating to defendant’s mental status. State v. Hebert, 187 La.
 
 318,
 
 174 So. 369.
 

 [2]
 

 . State v. Hebert, 187 La. 318, 174 So. 369.