176 So.2d 394

**STATE ex rel. Leonard CAESAR**

v.

**Lionel GREMILLION, acting superintendent of East Louisiana State Hospital.**

No. 47665.

June 7, 1965.

Rehearing Denied July 2, 1965.

See also 247 La. 481, 172 So.2d 292.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Max Mercer, Asst. Dist. Atty., for intervenor and relator.

Sylvia Roberts, H. K. Sweeney, Baton Rouge, William T. Bennett, Clinton, for respondent.

HAWTHORNE, Justice.

On a petition for habeas corpus filed in February, 1965, by Leonard Caesar, an in-

mate of the East Louisiana State Hospital located in the Parish of East Feliciana, the judge of the Twentieth Judicial District Court for the Parish of East Feliciana issued an order directed to Lionel Gremillion, acting superintendent of the hospital, commanding him to bring Caesar into court and to show cause why Caesar should not be released from further confinement in the institution. The acting superintendent produced Caesar in court and answered that Caesar was being held in the custody of the hospital under an order of the Criminal District Court for the Parish of Orleans, Section "B". The district attorney of Orleans Parish, intervening in the proceedings, filed an exception to the jurisdiction which was overruled. The court after a hearing "conditionally grants the Habeas Corpus, releasing the relator from the custody of East Louisiana State Hospital, remanding him to the Sheriff of the Parish of East Feliciana, Louisiana, to be held in the Parish prison until appropriate notice is given to the Criminal Sheriff of the Parish of Orleans to return this prisoner to his jurisdiction to be dealt with as the law may prescribe". The case is now before us under our supervisory jurisdiction for review of the validity of the proceedings.

It is necessary to recount certain facts for an understanding of the background of this matter.

Leonard Caesar, the applicant for the writ of habeas corpus, who was arrested in the Parish of Orleans in March, 1956, was indicted by the grand jury of that parish for aggravated rape. Through counsel Caesar sought and obtained an order appointing a lunacy commission. At the lunacy hearing the judge of the Criminal District Court for the Parish of Orleans, Section "B", adjudged Caesar to be presently insane and on November 14, 1956, ordered him committed to the criminally insane division of the East Louisiana State Hospital at Jackson, Louisiana, there to be confined until further orders of the court.

In June, 1963, more than six years after Caesar's commitment, the proper authorities of the hospital wrote the judge of Section "B" of the Criminal District Court for the Parish of Orleans and the district attorney of that parish that in their opinion Caesar was capable of understanding the criminal proceedings pending against him and of assisting counsel in his defense. The hospital authorities did not receive any response to these communications, the Orleans officials took no action in the matter,[1] and Caesar remained incarcerated in the hospital.

In September, 1964, more than a year after the Orleans authorities had received the report of the hospital, Caesar in proper person petitioned the judge of the Twentieth

---

1. This was a breach of the duty imposed by R.S. 15:267, and is looked upon with disapproval by this court.

Judicial District Court for a writ of habeas corpus. The district judge in those proceedings ordered Caesar released from the hospital and placed in the custody of the sheriff of East Feliciana Parish to be held for the Orleans Parish authorities. Caesar was shortly afterwards returned to the Parish of Orleans, and on motion of the State the judge of Section "B" again appointed a lunacy commission to examine Caesar's present mental condition. After a hearing on October 22, 1964, the judge found Caesar to be presently insane and unable to assist in his defense, and ordered him recommitted to the criminally insane division of the East Louisiana State Hospital at Jackson to be confined until further orders of the court.

We now come to the events immediately preceding the filing of the habeas corpus proceedings presently before us.

On January 11, 1965, about three months after Caesar's recommitment, the proper authorities of the hospital addressed a communication to the judge of Section "B" of the Criminal District Court for the Parish of Orleans, and sent a copy to the Orleans district attorney. In this letter the hospital authorities stated that they were of the opinion after recent psychiatric, psychological, and physical examinations that Caesar possessed the capacity to understand the charge pending against him and possessed the capacity to cooperate with, communicate with, and assist counsel in his defense, and they requested that the proper officers be

sent for him and that he be returned to the Orleans court. The record does not disclose that any response was received to this letter.

In February, 1965, approximately a month later, Caesar through counsel filed in the Twentieth Judicial District Court for the Parish of East Feliciana the instant petition for habeas corpus, which was granted.

In response to the writ the officials of the East Louisiana State Hospital produced Leonard Caesar in court, and established that he was being held by the hospital authorities under an order of commitment issued by the Criminal District Court for the Parish of Orleans, Section "B", the court in which an indictment charging aggravated rape was pending against him and which had adjudged him presently insane. At the hearing in these habeas corpus proceedings the proper officers of the mental hospital testified that in their opinion Caesar had regained his sanity, and that they had so reported in writing to the committing court, from which they had received no response. According to testimony adduced, the administrative officer of the hospital had also telephoned the committing judge, who said that he would confer with the district attorney's office and that appropriate action would be taken. Officials of the hospital also testified that they had seen and talked to an assistant district attorney of Orleans Parish and had been informed by him that the judge and various members of the district attorney's staff were convinced the patient was sane

under the law but because so much time had elapsed since the commission of the crime, evidence would be difficult to produce and for this reason they were not particularly anxious to try the case. Although the hospital authorities were of the opinion that Caesar was legally sane, nevertheless there was testimony that he was undoubtedly a dangerous person, a paranoid with possible brain damage, and should not be released into society.[2]

After this hearing the judge of the East Feliciana court on February 22, 1965, issued the order quoted in the beginning of this opinion, which had the effect of releasing Caesar from the custody of the East Louisiana State Hospital and ordering him held by the sheriff of East Feliciana Parish until notice could be given to the authorities in the Parish of Orleans.

Let us now discuss the Louisiana law applicable to these proceedings.

"The writ of habeas corpus is an order in writing, issued in the name of the state, by a judge of competent jurisdiction, and directed to the person who has another in his custody, or detains him in confinement, commanding him to bring before the judge the person thus detained, at the time and place appointed in the writ, and to state the reason for which he thus keeps him imprisoned and deprived of liberty." R.S. 15:113; see also Code of Civil Procedure Art. 3821.

The Louisiana Constitution of 1921, Article 7, Section 2, provides that "* * * each district judge throughout the State including judges of the Civil and Criminal District Courts in the Parish of Orleans, may issue writs of habeas corpus, in behalf of any person in actual custody in cases within their respective jurisdictions * *."

Under R.S. 15:114, "The writ of habeas corpus may be issued: * * * by the district judges, at the instance of any person in actual custody in their respective districts * * *." Pursuant to Article 3822 of the Code of Civil Procedure, "Habeas corpus proceedings may be brought in the parish in which the defendant is domiciled or the parish in which the person detained is in custody."

Under R.S. 15:267, if the court after a hearing as provided therein concludes that a defendant against whom an indictment has been found is insane or mentally defective to the extent that he is unable to understand the proceedings against him or to assist in his defense, the court shall take the necessary steps to have the defendant

---

2. In brief filed by the Orleans district attorney in this court it is stated that Caesar, who had a previous record of arrests, was arrested in connection with four rapes committed in New Orleans in 1955–1956 (one of these rapes is charged in the indictment pending in Section "B"), that after an unsuccessful attempt to escape from the New Orleans police he made a sensational jail break from the parish prison, shot a warden, remained at liberty for 10 days, committed a burglary, and was finally recaptured only after being halted by a shotgun blast.

committed to the appropriate institution. Section 267 continues: " * * * If thereafter the proper officer of such institution is of the opinion that the defendant is able to understand the proceedings and assist in his defense the officer shall report the fact to the court which conducted the hearing. If the officer so reports, *the court shall fix a time for a hearing* to determine whether the defendant is able to understand the proceedings and to assist in his defense. This hearing shall be conducted in all respects like the original hearing to determine the defendant's mental condition. If after the hearing the court decides that the defendant is able to understand the proceedings against him and to assist in his defense it shall proceed with the trial. If, however, the court decides that the defendant is still not able to understand the proceedings against him or to assist in his defense, it shall recommit him to the proper institution." (Italics ours.)

R.S. 15:271(B) makes it the mandatory duty of the medical staff of every institution containing patients committed thereto, who are confined in a security ward as a result of being charged with a crime for which they are to stand trial upon release, to review at least once a year the records of such patients in order to determine whether they are capable of standing trial for the crime for which they are charged. This statute further provides: "Any patient determined to be capa-

ble of standing trial shall be delivered into the custody of the court having jurisdiction to proceed with the trial of the patient in accordance with the provisions of this Sub-Part."

R.S. 15:271(C) stipulates: "No patient who has been committed to a mental institution by court order pursuant to any civil or criminal proceedings *shall be released therefrom* * * * *except upon order of the court which committed the patient.*" (Italics ours.)

The question raised in this court is whether the East Feliciana district court was authorized in view of the foregoing constitutional and statutory provisions to issue the order under review.

■ Caesar, who was confined in the East Louisiana State Hospital in East Feliciana Parish, was in actual custody in the Twentieth Judicial District, and, as we view the matter, under either R.S. 15:114 or Article 3822 of the Code of Civil Procedure the district judge of that district had authority to grant Caesar a hearing on his application for a writ of habeas corpus. These statutes embody generally recognized principles of the right of habeas corpus, and are not in conflict with or repugnant to Article 7, Section 2, of our Constitution, set out above, under which the district courts may issue writs of habeas corpus in cases within their respective jurisdictions.[3]

3. Under this constitutional provision Caesar could bring habeas corpus pro- ceedings in the Criminal District Court for the Parish of Orleans.

After the hearing on the habeas corpus petition the East Feliciana district judge ordered Caesar released from the custody of the East Louisiana State Hospital. In this we think the judge erred. At the hearing the hospital authorities established that Caesar was being held in the hospital by a commitment of the Criminal District Court for the Parish of Orleans, Section "B", and therefore the judge's ruling releasing him from that institution was prohibited by the express provision of R.S. 15:271(C) that no patient who has been committed to a mental institution by court order pursuant to any criminal proceeding shall be released from the institution except upon order of the court which committed the patient. The judge should have refused to order Caesar's release. For this reason the order of the Twentieth Judicial District Court releasing Caesar from the custody of the hospital must be annulled and set aside, and Caesar must be returned to the custody of the hospital authorities. Nevertheless this is not the end of the matter, for Caesar's constitutional and statutory rights must be protected.

Since the proper officers of the hospital have informed the committing court that in their opinion Caesar is legally sane, upon Caesar's return to the hospital the committing court under the mandate of the law must immediately take the necessary steps to have him returned to its custody, and, as the law states, shall fix a time for a hearing on his present sanity. This hearing must be held within a reasonable time; and upon a proper showing that the court has failed in this mandatory duty (as it did at least once before in this case) we will not hesitate to order it to comply with the law. If at the hearing the judge finds Caesar to be legally sane, the State of Louisiana through the district attorney of Orleans Parish must grant him his constitutional right to a speedy trial under the charge lodged in the indictment. In the event the judge finds him to be presently insane, Caesar has a right of appeal to this court for review of the ruling. See State v. Herbert, 187 La. 318, 174 So. 369; State v. Yaun, 237 La. 186, 110 So.2d 573.

The fact that Caesar is said to be a dangerous person who should not be released into society naturally causes concern to the district attorney and other officials of the Criminal District Court for the Parish of Orleans, but this concern does not justify denying him a prompt hearing on the question of whether he is able to understand the criminal proceedings pending against him and to assist in his defense. If he is found to be presently sane by the court and able to stand trial on the criminal charge or charges pending against him, and is tried and acquitted or the charges dismissed, he can be committed to the proper institution under the Mental Health Law, R.S. 28:1 et seq.,[4]

4. Particularly Sections 2, 21, 25, 52, 53, and 96(E). See also R.S. 15:271(C).

if found to be mentally ill, particularly if he has dangerous tendencies;[5] and proceedings for this commitment may be instituted by any person designated in the Mental Health Law.

For the reasons assigned the judgment of the Twentieth Judicial District Court for the Parish of East Feliciana ordering Leonard Caesar released from the custody of the East Louisiana State Hospital is annulled and set aside, and it is ordered that Caesar be returned to the custody of that institution.

McCALEB, J., concurs in the decree.

5. The term "dangerous tendencies" as used in the statute means "a condition existing in a person which makes him a constant potential threat to the person or property of others." R.S. 28:2(12).