HAMLIN, Justice.
Defendant appeals to this Court from a judgment or ruling of the trial court rendered July 25, 1966, which found that he is at the present time sane; that he is able to appreciate the usual, natural, and probable consequences of his acts; that he is able to distinguish right from wrong; and that he is able to assist his counselor.
A bill of exceptions was reserved to the above ruling, and to this bill the trial judge wrote the following per curiam:
“The defendant, Junius Burrows, alias Junior Bowers, was committed to East Louisiana State Hospital at Jackson, Louisiana on February 20, 1950 as insane.
“After repeated requests, the Court ordered the defendant returned for reevaluation and appointed a lunacy commission to examine him. A hearing was had and the Court found the defendant sane. The attorney for the defendant excepted to the ruling, and perfected his bill of exceptions, which is the basis of this appeal.
“The testimony and also the letters from East Louisiana State Hospital reflect that the defendant is presently tak-. ing three drugs, namely, Mellaril, 50 mgs. three times a day, Elavil, 25 mgs. twice a day and Cogentin, 2 mgs. once a day. It is agreed that the administration of these drugs has produced a remission from the old mental illness of the defendant. The lunacy commission experts also testified that, if the drugs were discontinued, the defendant would likely have a remission into his former condition which resulted in his commitment.
“This question of a medically induced sanity is quite novel and I have been unable to find any precedent to govern the Court’s action.
“There is apparent agreement that a person kept on these drugs will remain sane and stable and that the removal of the treatment will cause a relapse.
“Query: Is this sanity produced by medication the legal sanity contemplated by the law sufficient to place a defendant on trial for his life, or can he be kept confined in a mental institution for the rest of his life, even though he is sane enough to be released because of the administration of medication?
“Can he be compelled to take drugs that will produce sanity sufficient for him to stand trial and, if found guilty of the death penalty, compelled to take drugs so that he may remain sane in order that his life may be taken?
*661 “The Court appears to be impaled on the horns of a dilemma. It is not beyond the realm of conjecture to have a situation wherein a defendant under medication is found sane yet, before trial he refuses to take medication and reverts to his former condition so that he cannot be tried and has to be recommitted. In other words, a defendant can control his mental situation by either taking or refusing to take medication.
“The question is novel but the number of similar cases presently in the courts are numerous and this per curiam is in the nature of a certification of the question: Is sanity induced by drugs legal sanity sufficient to enable a defendant to stand trial, or shall a defendant who is presently sane, with the administration of drugs, be compelled to remain in a mental institution for the rest of his life?”
The facts of record reflect that on November 3, 1949, the defendant was indicted for the crime of murder. LSA-R.S. 14:30. A lunacy commission, composed of Drs. C. S. Holbrook and C. Grenes Cole, was appointed in accordance with LSA-R.S. 15 :- 267 to examine the defendant with regard to his mental condition at that time and as of October 19, 1949, the alleged date on which defendant allegedly committed the instant offense. On January 23, 1950, the two doctors addressed a communication to Honorable Frank T. Echezabal, Judge, in which they stated that Junius Burrows, then confined in the parish prison, was unable to appreciate the usual, natural, and probable consequences of his acts; that he was unable to distinguish right from wrong; and that he was at that time insane and was insane on October 19, 1949. On February 20, 1950, defendant was committed to the East Louisiana State Hospital at Jackson, Louisiana, there to be held until thence delivered according to law. A letter addressed to Hon. Thomas M. Brahney, Jr., Judge, dated August 24, 1965, from Dr. Allan M. Johnstone, Clinical Director of the East Louisiana State Hospital (By Dr. F. H. Metz, Director of the Forensic Psychiatry Division), stated:
“We find that Junius Burrows may, within a broad scope of limitations, be capable of assisting counsel and understand charges pending against him. Currently, we do not believe that these limitations are so marked as to do a disservice to himself and his attorney. Because of episodes of psychosis in the past; we reason that he could again decompensate later.”
On February 23, 1966, Dr. Metz wrote to Judge Brahney, referring in his letter to the correspondence of August 24, 1965. Pic stated that since that time the defendant had been re-evaluated and found to have regained his sanity, and,that he was competent to stand trial. Dr. Metz prescribed certain drugs, stating that by continuing the drugs in small doses of medication the *563 hospital authorities believed that Junius Burrows could be pretty well stabilized into a remission from his old mental illness. He wrote:
“ * * * he has the basic requirement of sufficient intelligence to stand trial; he can give an understandable account of his movements and acts and those of others involved; he does appreciate the fact that the alleged act is viewed by the Court as a criminal act, whatever his own views may be; he does appreciate the possibility of punishment for his alleged act and in some realistic measure its potential extent and character; he can cooperate with and assist counsel within reasonable limits. In short, he does have a reasonably accurate appreciation of what is going on in the court situation per se, and he is able to participate in a reasonably self-protective fashion on a basis of this appreciation.”
As stated in the trial judge’s per curiam, supra, the Criminal Sheriff for the Parish of Orleans took custody of the defendant. He was then examined by Drs. Nicholas J. Chetta and Andrew J. Sanchez, Jr., who found him to be presently sane. Hearing by the trial court followed; the judgment or ruling, supra, from which the defendant appeals, ensued.
Counsel for the defendant contends herein that when a defendant such as Junius Burrows is suffering from amnesia as to the events that occurred at the time of the offense or his mental state as to those events is so confused that he cannot possibly be of any real or reliable assistance to' his counsel, he is not mentally capable of standing trial. Counsel also argues that a person only “synthetically” sane, in that he is sane while under the influence of powerful drugs but will suffer a retrogression into insanity and become a potential menace if these drugs are voluntarily or involuntarily removed, is not mentally capable of standing' trial.
The State urges that a trial court’s judgment or ruling holding that the accused is presently sane and able to stand trial is not a final judgment and hence is not appeal-able to this Court. It submits that a ruling finding the accused capable of standing trial does not finally dispose of the case and does not deprive the accused of his liberty. He may be acquitted in a trial on the merits, and in the event of a conviction, the trial judge’s ruling that the accused was mentally competent to stand trial could be reviewed on appeal.
From the facts set forth supra, we understand the dilemma in which the trial court found itself. We also know that the modern medical world of psychiatry has advanced to such a stage that new questions with respect to man’s mind, his sanity, and his insanity, are posed and will eventually have to be answered. The courts will have to rule insofar as present-day legal capacity is concerned. In this instant prosecution, *665 however, we do not find that the proceedings have arrived at the stage where this Court could or should rule on the correctness of the trial court’s judgment or ruling with respect to the mental capacity and ability of the defendant to stand trial. Presented for our consideration is only an interlocutory judgment or ruling, from which no appeal can presently be entertained.
LSA-R.S. 15:540 (the law in effect at the time of the trial judge’s ruling) provides that no appeal lies in any criminal case, except as otherwise provided in this Code, from any order, ruling or judgment which does not finally dispose of the case. The prosecution and the defense have each the right in an appealable case to appeal from the final prejudicial judgment. Also see LSA-R.S. 15:541.
Our jurisprudence has held that a person who has been adjudged insane by the trial court has an appeal from such a judgment or ruling. State v. Hebert, 187 La. 318, 174 So. 369; State v. Yaun, 237 La. 186, 110 So.2d 573; State ex rel. Caesar v. Gremillion, 247 La. 1108, 176 So.2d 394. If it were otherwise, such a judgment of the trial court would instantly deprive a defendant of his freedom and preclude his having a speedy trial with the possibility of acquittal. The correctness of the trial court’s judgment declaring a defendant presently insane might be affirmed on appeal, but such appeal is nevertheless appropriate and permissible. State v. Laborde, 210 La. 291, 26 So.2d 749. In order to avoid doubt and confusion, it is now set forth explicitly in Article 912 of the new Code of Criminal Procedure that a defendant may appeal from a ruling upon a motion by the State declaring the present insanity of the defendant; the finality of such a ruling or judgment is now codified. In other words, the previous jurisprudence has been codified.
A determination that a defendant is sane is not a final disposition of a prosecution. Such a finding means that the defendant, contrary to one found to be insane, State v. Laborde, supra, is to stand trial for the crime with which he is charged. To deny such a person a trial for speculative reasons of retrogression would infringe upon his fundamental rights of due process of law and a speedy public trial vouchsafed by Sections 2 and 9 of Article 1 of our Constitution and the Fourteenth Amendment to the Constitution of the United States. State v. Swails, 223 La. 751, 66 So.2d 796.
There are other instances where an accused’s pleas are overruled, and he must continue to trial and await a review of the trial judge’s rulings on appeal in the event of his conviction. An appeal does not lie from a judgment overruling an accused’s motion to quash his indictment. State v. Jackson, 140 La. 680, 73 So. 770. An appeal does not lie from the ruling of the trial judge .refusing to allow a plea of autre *667 fois convict, demurrable on its face, to be tried by a jury. State v. Foley, 114 La. 412, 38 So. 402. An appeal does not lie from the refusal of the trial court to grant a continuance. State of Louisiana v. Muldoon, 9 La.Ann. 24. The decision of the trial judge that an offense is not prescribed is not a final decision and is therefore not appealable. Cf. State v. Gendusa, 193 La. 59, 190 So. 332, cert. denied, 308 U.S. 511, 60 S.Ct. 133, 84 L.Ed. 436.
In criminal prosecutions, an appeal lies only from the sentence or final judgment, unless the ruling of the court upon a motion, plea, or other interlocutory matter finally disposes of the case. State of Louisiana v. Wilkins, 37 La.Ann. 62; State v. Carter, et al., 120 La. 96, 44 So. 997; Arceneaux v. State of Louisiana, 376 U.S. 336, 84 S.Ct. 777, 11 L.Ed.2d 750.
We conclude that the judgment or ruling of the trial court herein is not a final judgment, in that it does not finally dispose of this matter. As stated supra, it is merely interlocutory. The judgment or ruling of the trial judge does not specifically state that the defendant is to stand trial. But, such inference may be drawn from it. We cannot now pass upon the sanity vel non of the defendant herein. If he is found guilty^ his counsel’s contention that he is unable to assist him and his further contention that the defendant if sane is only “synthetically” sane may be reviewed on appeal. Cf. State v. Genna, 163 La. 701, 112 So. 655; State v. Yaun, 237 La. 186, 110 So.2d 573. If defendant is acquitted by reason of insanity at the time of the commission of the crime, no harm can come to the public or to him by reason of such acquittal, for the reason that, if it is determined that he cannot mingle with society in a normal and adjusted manner, he may be confined for care, observation and treatment. State ex rel. Caesar v. Gremillion, 247 La. 1108, 176 So.2d 394; Art. 654, new Code of Criminal Procedure; 26 La.L.Rev. 604.
In view of our conclusion supra, the appeal must be dismissed.
For the reasons assigned, the appeal is dismissed.