NO. 07-01-0405-CR
NO. 07-01-0406-CR
NO. 07-01-0407-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

OCTOBER 28, 2002

_____

PARTINA RHENEE CLEMONS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 405th DISTRICT COURT OF GALVESTON COUNTY;

NOS. 00CR0214, 00CR0215 & 00CR0216; HONORABLE HENRY G. DALEHITE, JUDGE

_____

Before QUINN and REAVIS, JJ. and BOYD, S.J.[*]

Following her pleas of not guilty, appellant Partina Rhenee Clemons was convicted by a jury of injury to a child in three separate causes and punishment was assessed at 40

_____

[*]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

years confinement in cause number 00CR0214 and confinement for life in cause numbers 00CR0215 and 00CR0216. Presenting five issues, appellant contends (1) the trial court erred by failing to grant her motion to quash the indictments which she claimed were in violation of the Texas and United States Constitutions; (2) the evidence is legally and factually insufficient to support a finding that she intentionally and knowingly committed injury to a child; (3) the jury was biased because Juror Allums failed during voir dire to disclose her knowledge regarding facts of the case; (4) the trial court erred in admitting into evidence inadmissible testimony of Joy Blackman because it failed to have a scientific basis as required by Rule 702 of the Texas Rules of Evidence; and (5) the trial court improperly admitted a tape recorded statement made by complainant because it did not meet the statutory requirements of an outcry statement. Based upon the rationale expressed herein, we affirm.

In 1999, when complainant was in the fourth grade, his teachers noticed he was sleeping excessively, eating out of the trash in the cafeteria, and stealing from others. Although one of his teachers testified that he was not a discipline problem, she noticed that his level of attentiveness changed. School staff and the assistant principal noticed that he was not walking normally and according to one teacher, complainant walked as if he was in pain with his posterior pushed out and his legs spread out. Scars and marks were also noticeable on his head, face, and legs. The school nurse testified that she first visited with complainant in September 1999 for his difficulty in walking. He told her he was

sore from a bicycle accident. She saw him again in November for an injury to the left ear. Appellant claimed complainant's ear was swollen from a sting or bite. In December, as complainant's sleeping habit became worse, the assistant principal was called to one of his classes to wake him. As he placed his hand on his back, he felt a mass the size of a baseball between complainant's shoulder blades. He was sent to the school nurse and when she raised his shirt she noticed a protrusion on his back as well as linear and pox-like scars, scratches, and bruises. She described what she observed as "quite sickening." Complainant told her he had fallen backwards.

Appellant, complainant's adoptive mother, was contacted by the school and upon meeting with the nurse, she agreed that medical attention was necessary. However, according to the nurse, appellant's response to complainant's injuries was, "it's really getting rough at the bus stop." The school nurse scheduled a doctor's appointment and alerted the doctor's nurse that she suspected child abuse and recommended a full examination. On December 3, 1999, complainant was taken to a pediatric facility and examined by nurses and Dr. James Lukefahr. Complainant reluctantly undressed and put on a paper gown; however, he was adamant about not having his injuries photographed. Although his vision, throat, and eardrums were normal, his left earlobe was hard and swollen. Multiple bruises, scars, lacerations, and lesions were observed on his upper body. His skin had a shiny appearance as if from healed burns. Appellant did not permit an examination of the victim's legs or genitalia. She also refused to give a street address

3

for medical records and was vague when questioned. Child Protective Services (CPS) was notified of the suspected abuse and after an investigation, complainant was removed from appellant's care and taken into custody. On December 6, 1999, he was taken to Dr. Lukefahr by a caseworker for a complete examination and tests. At trial expert testimony established that complainant suffered many injuries and burns and Dr. Lukefahr explained that they were not accidental, but were inflicted by deliberate force.

Officer Richard Rennison testified that in late 1999 he received a referral from CPS to investigate the suspected abuse. He questioned complainant's stepfather and went to the home to conduct tests on water temperature and other matters. After his investigation he met with the district attorney to file charges against appellant and the stepfather and arrest warrants were issued for both. Appellant was tried separately and convicted of three separate counts of injury to a child.

By her first issue, appellant contends the trial court erred by failing to grant her motion to quash the indictments which were in violation of the Texas and United States Constitutions. We disagree. The standard of review of a trial court's ruling on a motion to quash an indictment is abuse of discretion. Thomas v. State, 621 S.W.2d 158, 163 (Tex.Cr.App. [Panel Op.] 1980) (on reh'g). The Sixth Amendment to the United States Constitution guarantees an accused the right to be informed "of the nature and cause of the accusation," and Article I, Section 10 of the Texas Constitution provides that an accused "shall have the right to demand the nature and cause of the accusation against

4

him . . . ." *See also* Tex. Code Crim. Proc. Ann. arts. 21.02(7), 21.03, and 21.04 (Vernon 1989). Notice in an indictment must be with sufficient clarity and detail to enable the defendant to anticipate the State's evidence and prepare a proper defense. Eastep v. State, 941 S.W.2d 130, 132 (Tex.Cr.App. 1997) (en banc), *overruled on other grounds*, Riney v. State, 28 S.W.3d 561 (Tex.Cr.App. 2000). An indictment must allege on its face the facts necessary to (1) show that the offense was committed, (2) bar a subsequent prosecution for the same offense, and (3) give the defendant notice of what he is charged with. State v. Edmond, 933 S.W.2d 120, 131 (Tex.Cr.App. 1996) (en banc). A motion to quash should be granted when the language in an indictment concerning the defendant's conduct is so vague or indefinite as to deny the defendant effective notice of the acts allegedly committed. Daniels v. State, 754 S.W.2d 214, 217 (Tex.Cr.App. 1988) (en banc). The State is not required to plead evidentiary facts that are not essential to provide notice to the defendant. *Id*. at 218.

The indictments in cause numbers 00CR0214, 00CR0215, and 00CR0216 provide, respectively, that appellant:

> did then and there intentionally and knowingly cause serious bodily injury to [complainant] . . . by then and there striking and hitting the said [complainant] with an object which is not known to the Grand Jury
>
> did then and there intentionally and knowing cause serious bodily injury to [complainant] . . . by then and there burning the skin of the said [complainant] with a liquid which is not known to the Grand Jury; and

5

did then and there intentionally and knowingly cause serious bodily injury to [complainant] . . . by then and there burning the skin of the said [complainant] with a curling iron.

By her motion to quash in cause number 0214, appellant alleged the indictment did not comply with article 21.02 of the Texas Code of Criminal Procedure. By her motions to quash in cause numbers 0215 and 0216, she challenged the portions of the indictments alleging serious bodily injury as being insufficient and in violation of the guarantees of the Sixth Amendment of the United States Constitution and Article I, Section 10 of the Texas Constitution. The State argues that because her challenge below to the indictment in cause number 0214 does not comport with her argument on appeal, it is not preserved for review. *See* Trevino v. State, 991 S.W.2d 849, 855 (Tex.Cr.App. 1999) (holding that to preserve an issue for appellate review, the complaint on appeal must at least minimally comport with the complaint at trial). We agree, and review only her contentions regarding the indictments in cause numbers 0215 and 0216.

An indictment must set forth everything necessary to be proved in plain and intelligible words. *See* Tex. Code Crim. Proc. Ann. arts. 21.02(7) and 21.03 (Vernon 1989). Appellant was charged with causing serious bodily injury to complainant by burning his skin with a liquid (0215) and with a curling iron (0216). Appellant contends that the indictments should have alleged which definition of serious bodily injury the State intended to prove. However, because serious bodily injury is defined in section 1.07(46) of the Texas Penal Code Annotated (Vernon 1994), any further allegations of the nature of the

injury are merely evidentiary and are not required. Montgomery v. State, 704 S.W.2d 359, 363 (Tex.App.--Corpus Christi 1985, pet. ref'd); s*ee also* McKinney v. State, 59 S.W.3d 304, 310 (Tex.App.–Fort Worth 2001, pet. ref'd) (holding that an indictment alleging that causing serious bodily injury to a child by hot liquid provided adequate notice of the charges against which the defendant must defend). We conclude the allegations contained in the indictments were sufficient to notify appellant of the nature and cause of the accusations and thus, the trial court did not abuse its discretion in denying her motions to quash. Issue one is overruled.

By her second issue, appellant challenges the legal and factual sufficiency of the evidence to support a finding that she intentionally and knowingly committed the charged offense and that complainant suffered serious bodily injury. We disagree. When both the legal and factual sufficiency of the evidence are challenged, we must first determine whether the evidence is legally sufficient to support the verdict. Clewis v. State, 922 S.W.2d 126, 133 (Tex.Cr.App. 1996). In conducting a legal sufficiency review, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 157 (Tex.Cr.App. 1991), *overruled on other grounds*, Paulson v. State, 28 S.W.3d 570, 573 (Tex.Cr.App. 2000). As an appellate court, we may not sit as a thirteenth juror, but must uphold the jury's

7

verdict unless it is irrational or unsupported by more than a mere modicum of evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Cr.App. 1988).

After conducting a legal sufficiency review under *Jackson*, we may proceed with a factual sufficiency review. *Clewis*, 922 S.W.2d at 133. The Court of Criminal Appeals has directed us to ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the fact finder's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex.Cr.App. 2000) (adopting complete civil factual sufficiency formulation); *see also* King v. State, 29 S.W.3d 556, 563 (Tex.Cr.App. 2000). Accordingly, we will reverse the fact finder's determination only if a manifest injustice has occurred. *Johnson*, 23 S.W.3d at 12. In conducting this analysis, we may disagree with the jury's determination, even if probative evidence supports the verdict, but must avoid substituting our judgment for that of the fact finder. *See* Santellan v. State, 939 S.W.2d 155, 164 (Tex.Cr.App. 1997).

A person commits injury to a child by intentionally, knowingly, recklessly, or with criminal negligence, acting to cause serious bodily injury. Tex. Pen. Code Ann. § 22.04(a)(1) (Vernon Supp. 2002). Serious bodily injury is bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. Tex. Pen.

Code Ann. § 1.07(46) (Vernon 1994). The culpable mental states of intentionally and knowingly are defined as follows:

> A person acts intentionally . . . with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.
>
> A person acts knowingly . . . with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly . . . with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

Tex. Pen. Code Ann. § 6.03(a) and (b) (Vernon 1994). In determining the legal sufficiency of the evidence to show appellant's intent or knowledge, and faced with a record that supports conflicting inferences, we must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution. Couchman v. State, 3 S.W.3d 159, 163 (Tex.App.–Fort Worth 1999, pet. ref'd), citing Mason v. State, 819 S.W.2d 839, 846 (Tex.Cr.App. 1991). Further in circumstantial evidence cases it is not necessary that every fact point directly and independently to the accused's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. Johnson v. State, 871 S.W.2d 183, 186 (Tex.Cr.App. 1993), *cert. denied*, 511 U.S. 1046, 114 S.Ct. 1579, 128 L.Ed.2d 222 (1994); Armstrong v. State, 958 S.W.2d 278, 283 (Tex.App.–Amarillo 1997, pet. ref'd).

Injury to a child is a result-oriented crime for which the Legislature intended to punish the result of the defendant's conduct, not the conduct itself. Alvarado v. State, 704 S.W.2d 36, 39 (Tex.Cr.App. 1985) (en banc); Assiter v. State, 58 S.W.3d 743, 748 (Tex.App.–Amarillo 2000, no pet.). Intent may be inferred from the acts and the words of the accused as well as the surrounding circumstances. Ledesma v. State, 677 S.W.2d 529, 531 (Tex.Cr.App. 1984) (en banc); Hill v. State, 883 S.W.2d 765, 769 (Tex.App.–Amarillo 1994, pet. ref'd).

Appellant has been complainant's adoptive mother since he was an infant. In 1999, when complainant was in the fourth grade, he began falling asleep during classes. Teachers also noticed that he was stealing snacks and lunch money and eating out of the trash in the cafeteria. Although he was not characterized as a discipline problem, he did not follow directions. Phone calls were made to appellant and discipline referrals were sent home. School staff also noticed that complainant was walking with difficulty as if he were in pain. In November, complainant was sent to the school nurse with an injury to his left ear, which she characterized as "cauliflower ear." Joy Blackman, a physician's assistant, testified at trial that "cauliflower ear" is caused by repetitive blows and is common in boxers. She also testified that the condition persists for a long period of time. Appellant told the school nurse that complainant had probably been stung in the ear; however, medical testimony confirmed that the injury was not consistent with a bite or sting, which would have healed quickly.

10

Complainant's sleeping habit worsened, and on December 2, one of his teachers asked the assistant principal to wake him. As he placed his hand on complainant's back, he felt a large mass between his shoulder blades. He was sent to the school nurse to have his spine checked and as the nurse raised his shirt, she observed the lump as well as other scars, bruises, and scratches on his upper body. Appellant was scheduled to meet with school staff the following day regarding tests to be conducted on complainant and the nurse decided to wait until then to talk about the mass on complainant's back. On December 3, when appellant met with the nurse, she agreed that complainant required medical attention. The school nurse scheduled an appointment with a pediatric facility and alerted the nurse about suspected abuse and suggested a thorough examination. Upon arriving at the doctor's office, appellant indicated complainant was seeing the doctor for a possible problem with his spine and for excessive sleeping. After the examination, the doctor's office referred the matter to CPS to investigate and complainant was removed from appellant's care.

On December 6, complainant returned to the doctor's office with a caseworker for a bone scan, x-rays, and an MRI. At trial, Blackman, who assisted Dr. Lukefahr when he examined complainant, testified to the following injuries found on complainant:

- cauliflower ear which was not consistent with a sting or bite;
- looped scars to the head which are caused by being struck with a cord or strap that has been doubled over;
- healed scars on either sides of the eyes;

11

- four linear almost healed cuts on the neck that looked like fingernail scratches;

- healed looped scars on the right lateral thigh and buttock;

- healed linear and looped scars on the back of the left thigh;

- a round scar consistent with a cigarette burn on the top of the right hand;

- healed linear and looped scars on the left hand;

- healed burn scars from a hot liquid underneath the arms;

- healing abrasion on the right shoulder with a firm bony prominence;

- healed cuts on the front of the chest;

- overlapping injuries which could be either abrasions or burns;

- a lesion on the front of the right shoulder;

- healed burns on the right pelvic bone and groin area;

- healed contact burns to the scrotum and shaft of the penis; and

- an inverted V-scar on the chest most likely caused by a knife or similar sharp object.

Blackman also testified that looped scars are not accidental and are consistent with child abuse from a looped belt or cord. The burns to the groin area had sharp margins and clean borders, and thus were caused by contact. A bone scan showed post-traumatic changes–healing scars–from fractures or trauma. She concluded complainant was the victim of child abuse. A follow-up visit in April 2000 indicated a better attitude in complainant and better eating and sleeping habits while living in a children's home. In those few months complainant gained over ten pounds and grew six and one-half centimeters. The injury to his ear, however, remained unchanged from December and she testified it could be permanent.

12

Doctor Lukefahr testified that complainant was ten years old when he examined him and that he exhibited an inordinate number of injuries for a child that age. He further testified that complainant's scars are permanent. He described the injuries as non-accidental. He explained that the burns to complainant's flank area under his arms could not have been caused by a hot shower. They were more rounded and had a "sort of flow" whereas burns from a hot shower leave a salt and pepper appearance because of the drops. Moreover, an ambulatory person would make an effort to get away from the hot water before being burned. He also testified that "cauliflower ear" is caused by a blow strong enough to cause bleeding under the skin and form a blood clot that attaches itself to the cartilage and becomes permanent. He explained that the mass on complainant's back was caused by either a healed fracture to the shoulder blade or was a benign growth, but could not reach a conclusion on what caused it. Regarding the contact burns to complainant's genital area, he categorized them as deep second degree burns which must have been extremely painful and would have caused him to walk with his legs spread to minimize contact with his clothes. He did not believe that such burns could be caused by falling on a hot object; rather, he was of the opinion that a small clothes iron could have been applied to the scrotum and also could not rule out the possibility that a curling iron was used.

On April 3, 2000, while the victim was residing in a children's home, he was visited by Rennison and Meredith Shropshire, a caseworker who had met with complainant during

13

the preceding months. According to Shropshire, up until April 3, the victim had not revealed the name of the person who abused him. Rennison was not in uniform and was driving an unmarked patrol car. Complainant sat in the front seat with Rennison and Shropshire sat in the back. They took him for ice cream and spent time trying to make him comfortable before questioning him. Rennison asked a few questions about the injuries before making an audio tape of complainant's statement. Complainant was aware he was being taped and told Rennison that appellant had heated water in a microwave oven and thrown it on him because he was "bad." He also claimed that burns to his genital area were made by appellant with a curling iron.

At the time of trial, complainant testified that he had not seen appellant in over a year and that he loved her and wanted to live with her. He could not recall falling asleep during classes and could not remember his visit to Dr. Lukefahr in 1999. He also denied that appellant ever injured him. He claimed never to have observed scars on his body, but did acknowledge burns to his genital area which he testified were the result of jumping into a tub full of hot water twice. He could not explain why his knees and feet were not burned. When questioned about his difficulty in walking, he claimed he injured his knee in a fight. Regarding the injury to his ear, he testified that he woke up one day and his ear was swollen.

The only witness for the defense was complainant's biological father. Complainant had been living with him at the time of trial and had been doing so for a month and a half.

14

Although he had not been involved in complainant's life on a regular basis, he could not recall appellant hurting complainant. Approximately one week before trial, he took it upon himself to photograph complainant's body. The photographs were introduced into evidence and according to the father's testimony showed no permanent scars.

Based on the evidence presented and the combined and cumulative force of all the incriminating circumstances and deferring to the jury's resolution of appellant's intent or knowledge, we conclude the evidence established appellant's culpable mental state that she desired to engage in conduct reasonably certain to cause serious bodily injury. Thus, under *Jackson*, 443 U.S. at 318, the evidence is legally sufficient to establish that appellant intentionally and knowingly committed injury to a child. Both Blackman and Dr. Lukefahr testified that complainant's "cauliflower ear" could be permanent and Dr. Lukefahr also concluded that complainant's scars were permanent. Complainant's father testified, however, that based on his observations, complainant did not have any permanent scars. The photographs taken by complainant's father depicting complainant's face, upper body, and frontal genital area do not show the extensive injuries testified to by the State's witnesses; however, the unauthenticated photographs were taken several years after the investigation of abuse. Thus, the jury as the sole trier of fact was free to resolve conflicts or inconsistencies in the evidence and believe all, some, or none of the evidence. Hitt v. State, 53 S.W.3d 697, 709 (Tex.App.–Austin 2001, pet. ref'd), citing Bowden v. State, 628 S.W.2d 782, 784 (Tex.Cr.App. 1982) and Chambers v. State, 805 S.W.2d 459, 461

(Tex.Cr.App. 1991). We conclude the evidence is legally sufficient to show that appellant inflicted serious bodily injury upon complainant.

Concluding that the evidence is legally sufficient to support the verdict, we must now determine, after a neutral review of all the evidence, whether it is factually sufficient to support the verdict. *Johnson*, 23 S.W.3d at 11. It is the exclusive province of the fact finder to determine the credibility of the witnesses and the weight to be given their testimony. Johnson v. State, 571 S.W.2d 170, 173 (Tex.Cr.App. 1978); Armstrong v. State, 958 S.W.2d 278, 284 (Tex.App.--Amarillo 1997, pet. ref'd).

In addition to the evidence reviewed under our legal sufficiency analysis, the State also presented evidence that appellant had previously injured complainant. Doctor Lukefahr testified that according to medical records, when complainant was six he was taken to the emergency room by appellant for a fracture to his left arm. She claimed he had fallen from a couch, but according to Dr. Lukefahr, it was unusual for a child to have a fracture so close to the shoulder and that the injury was probably caused by a substantial amount of force in a wrenching, pulling, or twisting manner. According to a nurse's assessment dated July 22, 1996, complainant claimed appellant twisted his arm. Five years later at trial, however, complainant testified that he broke his arm when a bicycle fell on him. A CPS caseworker testified that following the injury to the arm, complainant was removed from appellant's home for a year until she completed psychological testing and therapy.

16

A former friend and neighbor of appellant's testified that when complainant was between seven and nine months old, she entered appellant's small apartment to find complainant confined to a dining room table by duck tape across his ankles, legs, arms, and mouth. According to the witness, appellant complained that the baby had been crying all day and was getting on her nerves. When complainant was two years old, appellant and the witness worked at a small daycare. On one occasion, complainant noticed appellant and ran up to her with outstretched arms crying out, "mama, mama" and appellant "popped" him in the head with a cordless telephone and told him to get away. After a neutral review of all the record evidence under *Johnson*, 23 S.W.3d at 11, and without substituting our own judgment, we conclude the evidence is factually sufficient to support the verdict. Issue two is overruled.

By her third issue, appellant complains the jury was biased because juror Mary Allums failed to disclose during voir dire knowledge of facts of the case. We disagree. By her motions for new trial, appellant alleged the following:

Newly discovered evidence.

There is newly discovered evidence which would effect the outcome of the case in that Juror Mary Allums had a prejudice against the defendant and a bias for the state which she failed to disclose during voir dire when she was questioned. Juror Allums would have been struck for cause, if she had answered truthfully concerning her knowledge of the defendant and/or the case.

Attached to the motion is a verification by trial counsel; however, no affidavit in support of the allegation is attached. *See generally* McIntire v. State, 698 S.W.2d 652, 658 (Tex.Cr.App. 1985) (en banc) (holding that a motion for new trial alleging juror misconduct must be supported by the affidavit of a juror or some other person in the position to know the facts). Although no record references were provided in her argument as required by Rule 38.1(h) of the Texas Rules of Appellate Procedure, our review of the voir dire proceedings reveals that the State asked at least seven questions of Allums, none of which indicated knowledge of the facts of the case that would show bias toward appellant. During defense counsel's voir dire examination no questions were asked of Allums.

The Court of Criminal Appeals has indicated great reluctance in engaging in speculation regarding bias, if any, of a juror in favor of or against a defendant. Jackson v. State, 548 S.W.2d 685, 697 (Tex.Cr.App. 1977). In *Jackson*, the Court noted that it was incumbent upon appellant to establish bias during voir dire and that failure to do so and present a challenge for cause waived any error. *Id*. Appellant's conclusion in her motion for new trial that when questioned during voir dire Allums failed to disclose a bias against her is not supported by the record. The State's questions to Allums were not designed to elicit bias and the defense did not question the panel, specifically Allums, regarding bias. Without a bill of exception demonstrating that Allums was biased or an affidavit showing the same, appellant has not preserved her complaint for appeal. *See* Roberts. v. State, 172 Tex. Crim. 500, 360 S.W.2d 883, 886 (1961); Henson v. State, 650 S.W.2d 432, 434-35

(Tex.App.–Houston [14th Dist.] 1982), *aff'd* 683 S.W.2d 702 (Tex.Cr.App. 1984). Issue three is overruled.

By her fourth issue, appellant contends the trial court erred in admitting the testimony of physician assistant Blackman because it failed to have a scientific basis and was inadmissible under Rule 702 of the Texas Rules of Evidence. She further argues that the trial court erred in denying her request to voir dire Blackman on her qualifications as an expert regarding burns. We disagree. When Blackman testified that complainant's burn scars were in a liquid pattern, *i.e.*, caused by hot liquid or scalding, defense counsel requested to voir dire the witness on her "expertise in the area of burns." After the trial court denied the request, Blackman testified about complainant's healed burn injuries as well as other injuries for approximately eight pages of the reporter's record. After an off-the-record bench conference, defense counsel announced that "[b]ased upon counsel's next question we really do not have a voir dire challenge concerning the qualifications of this witness." Based upon appellant's withdrawal of her request to voir dire Blackman, we conclude that trial court error, a question we do not decide, was waived. *See generally* Lemos v. State, 27 S.W.3d 42, 47 (Tex.App.–San Antonio 2000, pet. ref'd) (holding that counsel's comment, "I withdraw my objection to that" waived any complaint. Issue four is overruled.

By her final issue, appellant contends the trial court improperly admitted complainant's tape recorded statement because it did not meet the statutory requirements

of an outcry statement.  We disagree.  A trial court has broad discretion in determining the admissibility of evidence and its ruling will not be disturbed on appeal absent a clear abuse of discretion.  Garcia v. State, 792 S.W.2d 88, 92 (Tex.Cr.App. 1990) (en banc).  An outcry statement is one made by the child against whom the offense was allegedly committed to the first person, 18 years of age or older, other than the defendant.  Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a) (Vernon Supp. 2002).  An outcry statement is not inadmissible if:

> (1) on or before the 14th day before the date the proceeding begins, the party intending to offer the statement:
>> (A) notifies the adverse party of its intention to do so;
>> (B) provides the adverse party with the name of the witness through whom it intends to offer the statement; and
>> (C) provides the adverse party with a written summary of the statement;
>
> (2) the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement; and
>
> (3) the child testifies or is available to testify at the proceeding in court or in any other manner provided by law.

Art. 38.072 § 2(b).  Compliance with the statute is mandatory for the statement to be admissible.  Long v. State, 800 S.W.2d 545, 547 (Tex.Cr.App. 1990).

On the 14th day before trial, the State filed its notice of intent to use complainant's outcry statement made to Officer Rennison about the alleged abuse.  A written summary of the statement provided:

20

I was burned from hot water my Mom put on me. She heated it up in the microwave. She was not making soup or coffee. It happened because I was acting bad. The only reason she heated up the water is to put it on me. She hurt my hip when she was spanking me, she did it on accident, she was trying to whoop me. She was meaning to hit me on my butt and I kept moving. She was hitting me with a belt. My Mom Tina Clemons burned me on my privates from a curling iron. My Mom poured hot water on me and burned me. She never burned me with anything else.

Outside the jury's presence, Rennison testified that prior to making the audio tape of complainant's statement, he and caseworker Shropshire spent approximately one hour trying to make him feel comfortable. Afterward, he initiated a conversation about complainant's injuries and the burns to his genital area. He explained that he had conducted tests at his home on water temperature and that it was very important that he tell the truth. After complainant claimed that appellant inflicted the burns with a curling iron, Rennison told him he was activating the tape recorder. Complainant told him that appellant had heated up water in the microwave and put it on him for acting bad. When asked how his "private parts" became burned, complainant answered that appellant had used a curling iron. He also told Rennison that most of his injuries were caused by appellant.

Appellant argues the State violated the statutory notice requirement by not disclosing that Rennison's conversation with complainant prior to making the audio tape was the actual outcry statement. She contends she suffered harm by the admission of the tape which she claims was the result of coaching and coercion and also questions the reliability of the tape. The purpose of requiring notice is to prevent a defendant from being surprised

21

at trial by a victim's outcry statement. Upton v. State, 894 S.W.2d 426, 429 (Tex.App.–Amarillo 1995, pet. ref'd); Fetterolf v. State, 782 S.W.2d 927, 930 (Tex.App.–Houston [14th Dist.] 1989, pet. ref'd).

The caseworker that accompanied Rennison when he questioned complainant testified that he asked complainant if they could talk about the incidents that led to his injuries and then explained that he needed to record the statement. She believed Rennison's questions were open-ended questions, *i.e.*, they did not suggest an answer. She claimed that complainant seemed comfortable speaking to him and was not threatened or coerced in any manner. Furthermore, appellant's claim of surprise is without merit because the contents of the taped statement were elaborations on the introductory questions asked just prior to activating the recorder. We conclude that the State complied with the requirements of article 38.072 and thus, the trial court did not abuse its discretion in admitting complainant's taped outcry statement. Issue five is overruled.

Accordingly, the judgment of the trial court is affirmed.


Don H. Reavis
Justice


Do not publish.