Charles Wayne JACKSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 52875.

Court of Criminal Appeals of Texas.

March 16, 1977.

Rehearing Denied April 13, 1977.

---

Jack O. Herrington and Jim D. Lovett, on appeal, Clarksville, for appellant.

Pat F. Beadle, County Atty., Clarksville, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION

DAVIS, Commissioner.

Appeal is taken from a conviction for voluntary manslaughter. Punishment was assessed by the jury at ten years.

Appellant does not challenge the sufficiency of the evidence to support the conviction. The record reflects that on December 26, 1974, appellant and his wife were arguing in the presence of others. Appellant pulled a pistol from his pocket, two shots were fired, and Christine Rosser, appellant's sister, was killed and appellant's wife was wounded. The murder of Rosser is the gravamen of this prosecution.

Appellant challenges the sufficiency of the evidence to support the finding of a jury in a pretrial hearing that appellant was competent to stand trial.

This Court has consistently held that no appeal lies from a judgment rendered in a preliminary trial on the issue of competency

to stand trial. See *Knight v. State*, Tex.Cr. App., 538 S.W.2d 101; *Hassler v. State*, Tex.Cr.App., 473 S.W.2d 513; *Vardas v. State*, Tex.Cr.App., 518 S.W.2d 826; *Kalinec v. State*, Tex.Cr.App., 500 S.W.2d 146, and cases there cited. A careful reading of the leading authorities generally relied upon as the historical basis of such position reveals that such cases did not address the question here presented. See *Darnell v. State*, 24 Tex.App. 6, 5 S.W. 522; *Millikin v. Jeffrey*, 108 Tex.Cr.R. 84, 299 S.W. 435; *Holland v. State*, 52 Tex.Cr.R. 160, 105 S.W. 812; *Ex parte Morris*, 96 Tex.Cr.R. 256, 257 S.W. 894; *DeSilva v. State*, 98 Tex.Cr.R. 499, 267 S.W. 271; *Boehme v. State*, 159 Tex.Cr.R. 358, 264 S.W.2d 118; *Ex parte Hodges*, 166 Tex.Cr.R. 433, 314 S.W.2d 581. These cases dealt with appeals from sanity hearings conducted *after* a conviction or related to *direct* appeals from preliminary hearings on competency.

In *Griffin v. State*, Tex.Cr.App., 29 S.W.2d 349, this Court held that the Court of Criminal Appeals does not have jurisdiction to hear a direct appeal from a preliminary hearing finding an accused sane at the time of trial, but left open the question of whether the matter might be brought up on appeal from the case-in-chief:

"The question of whether or not the proceeding above was ancillary to the murder case and its issues of law might therefore be brought up with the main case is not here presented. We pass only on the right to appeal directly from a finding that he was mentally competent to conduct a rational defense."

In *Hardin v. State*, 157 Tex.Cr.R. 283, 248 S.W.2d 487, this Court held that it did not have jurisdiction to review a direct appeal from a finding of insanity at a preliminary hearing because the accused had not been found guilty of anything and no punishment had been assessed, and therefore the case was not a "criminal case" within the meaning of Art. 5, Sec. 5, of the Texas Constitution, which defines the jurisdiction of this Court.

This Court, for the first time, passed on the issue of whether the competency hear-ing could be reviewed, if brought up on appeal with the trial on its merits, in *Pena v. State*, 167 Tex.Cr.R. 406, 320 S.W.2d 355. In *Pena*, supra, it was stated:

"The preliminary trial on the insanity issues was not the trial now before this Court for review, but another separate trial, not strictly criminal in nature, from which no appeal lies. . . . To agree that he may complain upon appeal from a conviction of procedural errors at the preliminary trial on the insanity issues would be to say that an appeal does lie from the judgment in the preliminary trial, but is postponed until after a conviction upon the trial on the issue of guilt or innocence.

"We hold that appellant may not here complain of the refusal of his requested charges at the insanity trial."

Our research of authorities from other jurisdictions reveals no other state which has denied an appeal from a competency hearing when such issue is raised on appeal from the main proceeding. See 16 A.L.R.3d 714; *People v. Fields*, 62 Cal.2d 538, 42 Cal.Rptr. 833, 399 P.2d 369, 16 A.L. R.3d 708, cert. den. 382 U.S. 858, 86 S.Ct. 113, 15 L.Ed.2d 95; *People v. Francabandera*, 33 N.Y.2d 429, 354 N.Y.S.2d 609, 310 N.E.2d 292; *State v. Burrows*, 250 La. 658, 198 So.2d 393; *Desho v. State*, 237 Ind. 308, 145 N.E.2d 429; *Kilgore v. Commonwealth*, 310 Ky. 826, 222 S.W.2d 600; *Alexander v. State*, 71 Okl.Cr. 47, 107 P.2d 811. It appears that in the preceding jurisdictions there is no question that an accused can appeal from a competency hearing if he brings up the matter with the appeal on the trial on its merits. The more difficult question raised in these opinions from other jurisdictions is whether a *direct* appeal lies from a preliminary hearing on competency.

It is well settled that a conviction of an accused person while he is incompetent violates due process. See *Bishop v. United States*, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956); *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Perryman*

*v. State*, Tex.Cr.App., 494 S.W.2d 542. Due process requires a separate hearing to determine competency to stand trial, *Pate v. Robinson*, supra, and Texas law requires a jury trial on such issue. See *Townsend v. State*, Tex.Cr.App., 427 S.W.2d 55; *Cavender v. State*, Tex.Cr.App., 515 S.W.2d 277; Article 46.02, V.A.C.C.P.

Although the Constitution of the United States does not guarantee a right to appellate review, *Griffin v. People of the State of Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, Article 44.02, V.A.C.C.P. states that "A defendant in any criminal action has the right of appeal under the rules hereinafter prescribed." The Constitution of the State of Texas recites that this Court ". . . shall have appellate jurisdiction coextensive with the limits of the state in all criminal cases of whatever grade. . . ." See Vernon's Texas Const.Ann., Art. 5, Sec. 5. A hearing on competency is not a criminal action as such in that a determination of guilt or innocence is not made, but it is quasi-criminal in a sense that a finding of competency is a necessary prerequisite to subjecting the accused to a criminal trial for the offense charged. We find that a preliminary hearing to determine competency is ancillary to the main criminal proceeding.

We note that this Court reviews pretrial hearings had on motions to suppress evidence involving searches, seizures, and confessions and motions to quash an indictment when raised ancillary to the trial on the merits. It follows, and we so hold, that this Court should review a pretrial hearing on competency when such matter is raised in an appeal from the trial on its merits.

To the extent that *Knight v. State*, supra; *Hassler v. State*, supra; *Vardas v. State*, supra; *Pena v. State*, supra; *Kalinec v. State*, supra, and any other cases are in conflict, they are overruled.[1]

The record reflects that the pretrial hearing on competency to stand trial was had on March 24, 1975, and the trial on the merits was had on June 2, 1975.

At the competency hearing, Dr. John Holbrook, a psychiatrist, testified that he was appointed by the court to conduct a psychiatric examination of appellant. Holbrook testified that, in his opinion, appellant was not competent to stand trial, that appellant did not have a rational as well as factual understanding of the proceedings, and that appellant was highly suggestible. Holbrook related that appellant could not remember the facts of the event for which he was charged. Holbrook explained that because such event was abnormal appellant could not understand it, and thus could not remember it. Holbrook testified that a polygraph examination was administered to appellant to determine if he was feigning loss of memory, and appellant passed the exam. Holbrook stated that appellant's loss of memory was permanent and hospitalization would not benefit him.

Holbrook further testified that appellant was normal in that he reacted to conversation and responded to it, and that appellant had no mental disorder. He further related that appellant understood what was going on at trial, that he was capable of talking to his attorney about the proceedings and capable of talking about fact situations other than the one he was charged with. Holbrook stated that appellant knew it was murder to kill someone and that he thought that appellant "knows when he's charged with the offense of murder."

One of appellant's court-appointed counsel, Jack Herrington, testified that he had spoken with appellant on twenty-five or thirty occasions and that appellant was constantly changing the facts of his story. Herrington did not believe appellant was faking his condition, but did think appellant

---

1. While not limited to these cases, to the extent the following cases are in conflict, they are overruled: *Newton v. State*, Tex.Cr.App., 509 S.W.2d 610; *Martin v. State*, Tex.Cr.App., 475 S.W.2d 265; *Peach v. State*, Tex.Cr.App., 498 S.W.2d 192; *Schoier v. State*, Tex.Cr.App., 480 S.W.2d 657; *Rounsavall v. State*, Tex.Cr.App., 480 S.W.2d 696; *Taylor v. State*, Tex.Cr.App., 420 S.W.2d 601; *State v. Olsen*, Tex., 360 S.W.2d 398; *Ex parte Hodges*, 166 Tex.Cr.R. 433, 314 S.W.2d 581; *Sandlin v. State*, Tex.Cr. App., 477 S.W.2d 870.

would understand what would happen if one shoots another with a gun.

The State offered no evidence at the competency hearing and the jury found appellant competent to stand trial.

■ In our role as an appellate court, we must view the evidence in the light most favorable to the jury verdict. *Jordan v. State*, Tex.Cr.App., 506 S.W.2d 217; *Northcutt v. State*, Tex.Cr.App., 478 S.W.2d 935.

■ The question before us is whether an accused's loss of memory regarding the facts of the event for which he is charged, standing alone, renders him incompetent to stand trial as a matter of law. We find the question to be one of first impression for this Court, but find that there is a growing body of outside authority addressed to the question here presented. We find no case yet reported which has held that the inability to recall the event charged because of amnesia constitutes mental incapacity to stand trial. See *Amnesia: A Case Study in the Limits of Particular Justice*, 71 Yale L.J. 109 (1961, 1962); *United States ex rel. Parson v. Anderson*, 481 F.2d 94 (3rd Cir. 1973); *United States v. Sullivan*, 406 F.2d 180 (2nd Cir. 1969); *United States v. Stevens*, 461 F.2d 317 (7th Cir. 1972); *State v. Ferguson*, 26 Ariz.App. 285, 547 P.2d 1085 (1976); *Bradley v. Preston*, 263 F.Supp. 283 (D.C.Colo.1967), cert. den. 390 U.S. 990, 88 S.Ct. 1188, 19 L.Ed.2d 1296; *United States v. Stubblefield*, 325 F.Supp. 485 (D.C.Tenn. 1971); *People v. Francabandera*, 33 N.Y.2d 429, 354 N.Y.S.2d 609, 310 N.E.2d 292 (1974); *State v. Severns*, 184 Kan. 213, 336 P.2d 447 (1959); *State v. Swails*, 223 La. 751, 66 So.2d 796 (1953); and numerous authorities cited infra.

■ We note that Art. 46.02, V.A.C.C.P., as amended, did not become effective until June 19, 1975. However, at the time of appellant's hearing, the test for competency to stand trial was the same:

"The test for [determining] competency is whether [defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a ra-

tional as well as factual understanding of the proceedings against him."

See *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *Bonner v. State*, Tex.Cr.App., 520 S.W.2d 901; also see *Reeves v. State*, Tex.Cr.App., 516 S.W.2d 410; *Quintanilla v. State*, Tex.Cr.App., 508 S.W.2d 647; *Wages v. State*, Tex.Cr.App., 501 S.W.2d 105.

In *State v. McClendon*, 103 Ariz. 105, 437 P.2d 421 (1967), the court held that limited amnesia does not totally destroy the defense in that an accused is free to assist counsel in numerous ways, stating that, "We believe that a defendant is entitled to a fair trial, but not necessarily a perfect trial." See also *Commonwealth ex rel. Cummins v. Price*, 421 Pa. 396, 218 A.2d 758.

In *State v. Pugh*, 117 N.J.Super 26, 283 A.2d 537 (1971), a murder case, the court held that amnesia of the crime does not bar prosecution because, even if the defendant has forgotten the details of the crime, he is still competent to stand trial. The court explained that amnesia concerning the crime "does not render a defendant unable to comprehend his position or to consult intelligently with counsel in the preparation of his defense."

·In *Fajeriak v. State*, 520 P.2d 795 (Alaska 1974), the Alaska Supreme Court held that the loss of memory did not render one incompetent and that:

"Policy conjoins with precedent to oppose an expansion of the doctrine of incompetency to include amnesia. The potential for fraudulent allegations of memory loss is so great that we would for this reason alone be reluctant to follow amnesia as a ground for a finding of incompetency even if we were otherwise inclined to do so."

The leading case on the competency of an amnesiac defendant to stand trial is *Wilson v. United States*, 129 U.S.App.D.C. 107, 391 F.2d 460 (1968). *Wilson* cites *Dusky v. United States*, supra, as the case which establishes the test of competency in federal courts, the same test for competency in

Texas. *Wilson* sets forth the following factors as appropriate for the trial court to consider in determining competency:

" ' (1) The extent to which the amnesia affected the defendant's ability to consult with and assist his lawyer.

(2) The extent to which the amnesia affected the defendant's ability to testify in his own behalf.

(3) The extent to which the evidence in suit could be extrinsically reconstructed in view of the defendant's amnesia. Such evidence would include evidence relating to the crime itself as well as any reasonably possible alibi.

(4) The extent to which the Government assisted the defendant and his counsel in that reconstruction.

(5) The strength of the prosecutor's case. . . . If there is any substantial possibility that the accused could, but for his amnesia, establish an alibi or other defense, it should be presumed that he would have been able to do so.

(6) Any other facts and circumstances which would indicate whether or not the defendant had a fair trial.' "

See also *United States v. Borum,* 464 F.2d 896 (10th Cir. 1972),

In *People v. Francabandera,* supra, it was stated:

"When it is considered that the result of an order finding defendant unfit for trial in these circumstances would be outright release, assuming the amnesia is permanent and there is no other mental defect sufficient to warrant commitment under CPL art. 730, it can be more easily understood why all the courts which have passed on this question have refused to allow amnesia to be classified as the sort of mental defect causing incapacity to stand trial. This certainly is a consideration in balancing the public safety against the individual's rights; but we do not wish to be understood as making this our prime consideration since it would not fully meet the constitutional arguments.

Rather, we are in accord with the reasoning in *Wilson* which addresses itself to the question whether defendant can conceivably receive a fair trial; and, after trial, whether defendant did in fact receive a fair trial. This allows for essential case-by-case evaluation."

Applying the foregoing standards to the instant case, we cannot say that appellant did not receive a fair trial. The State introduced evidence that appellant and his wife were having an argument, that two shots were fired, and that appellant's wife was wounded and appellant's sister was killed. Appellant's wife testified that appellant "accidentally" shot her and that he told her immediately after the shooting that he shot the deceased. The State introduced medical reports by examining physicians and testimony by attending nurses at the hospital as to admissions made by appellant when he brought the shooting victims to the hospital. There is no suggestion that this evidence was not discoverable by appellant if he did not have access to it. Appellant does not complain of any unwillingness on the part of the State to assist him in the reconstruction of the facts.

Appellant testified in his own defense and stated that he was going to scare his wife with the gun and the gun "hung" and it fired and his wife was hit. He related that he found his sister shot also and carried both to the hospital. No defense has been suggested by appellant which the loss of memory has locked in. Appellant does not challenge the sufficiency of the State's evidence to support the jury's verdict at the trial on the merits.

■ We find the evidence sufficient to support the jury's verdict that appellant was competent to stand trial.

Appellant next contends that the trial court erred in refusing to allow Dr. Holbrook to testify before the jury at the trial on the merits regarding appellant's state of mind at the time of the alleged offense.

■ We held in *Winegarner v. State,* 505 S.W.2d 303, that it is not proper for a psychiatrist to give his opinion based upon

hearsay as to the intent of appellant at the time of the offense. No error is shown.

Appellant next contends that a pistol was erroneously admitted into evidence because it was obtained as the result of an improper search, and that the trial court erred in refusing to submit appellant's requested instruction under Art. 38.23, V.A.C.C.P.

The record reflects that Harold Griffin, an ambulance driver, helped appellant carry the wounded women into the hospital from appellant's automobile. Griffin noticed appellant take a pistol out of his pocket and place it in the console of his car. Griffin asked appellant to go into the hospital and, after appellant had done so, Griffin removed the pistol from appellant's car and subsequently turned it over to the police. Griffin was a former police officer, having completed basic training, and was certified as a police officer. Griffin's employment with the police department had terminated approximately one month before the occurrence of the events in question.

Appellant urges that the evidence should have been excluded because Griffin's search of his automobile was in violation of his Fourth Amendment rights and in violation of Art. 38.23, supra, in that no search warrant was issued and no exigent circumstances were evident.

It is undisputed that appellant had a gun on the occasion in question and that he placed same in the console of his car. Appellant took the stand and admitted that he entered the room and that he had a gun in his pocket. He further testified on direct:

"By the time I got it out, it shot and hit Linda and Linda just went to one side and said Bubby, you done shot me.

\* \* \* \* \* \*

"And I went to pick her up to carry her to the doctor and I turned around and she said Christine is shot."

On cross-examination, appellant testified:

"Q  Where did you place the pistol in the car?

"A  In the console.

"Q  Is that between the two seats?

"A  Right.

"Q  Is that the same pistol that you were holding when Linda was shot?

"A  Sir?

"Q  Is that the same pistol you were holding when Linda was shot?

"A  Right.

"Q  So the pistol that was in the console there at the hospital is the same pistol?

"A  That I had when Linda was shot?

"Q  When you went in there?

"A  When Linda was shot?

"Q  Right.

"A  Right.

"Q  You can't say for sure that this pistol right here in [sic] the same one, but it's the same type?

"A  I don't have it marked. I wouldn't know.

"Q  It does appear to be an identical type pistol?

"A  Right."

■ Assuming that the complained-of search was illegal, we conclude that the admission of the evidence was harmless beyond a reasonable doubt in light of the undisputed evidence in the record that appellant had a pistol on the occasion of the shooting and that he placed same in the console of the car. See *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Clay v. State*, Tex.Cr.App., 518 S.W.2d 550.

Appellant contends further that inculpatory verbal statements were improperly admitted into evidence over his objection.

The record reveals that appellant was asked by the ambulance driver to go into the hospital after the bodies were taken inside. Appellant went into the emergency room where the deceased's body was taken.

Joy Tucker, a nurse, "went in to obtain the information from Mr. Jackson on the address and all the proceedings we have to have on the emergency room form." Linda Jeter, another nurse, was present during the questioning. Tucker obtained information concerning the name, address, age, tel-

ephone number, and doctor of the deceased. When Tucker inquired into the history as to how the accident occurred, appellant responded, "There's no history to it. I shot both of them." Tucker related that she was surprised by the answer and asked no further questions. She further stated that the filling out of the emergency room form was a routine matter, even if a patient comes "in with a stomachache." Tucker stated that no policemen were present when the questioning occurred, but that the police were called when a gunshot victim was admitted into the hospital, and that the police had access to the hospital records.

Appellant objected to the testimony of Tucker on the grounds that the statements made by appellant constituted an oral confession and were not admissible under the United States and Texas Constitutions and under the Code of Criminal Procedure.

Jeter subsequently testified to the same statements made by appellant and appellant again objected. On appeal, appellant only complains of the testimony of Jeter.

Article 38.22, V.A.C.C.P., provides that an oral confession is not admissible if made while an accused is confined in the custody of an officer unless certain requirements are met.

Appellant urges that he was in the custody of an officer because the ambulance driver was a former police officer and he asked him to go into the hospital and because the hospital reports were frequently read by police officers when gunshot victims were admitted into the hospital.

▆ Assuming the evidence was inadmissible, we find that its admission would not require reversal. The record reflects that appellant testified upon direct examination as follows:

"Q. Now, Charles, when the nurse at the hospital asked you for a history of the shooting, you told them that you shot both of them?

"A. At that time, I felt that I did.

"Q. Well, are you saying now that you did not?

"A. I am.

"Q. But you told her that you did?

"A. She asked me her name and a whole lot of more information. I gave her all that I could.

"Q. Uh—huh.

"A. Then she asked me, said I need some kind of medical history about what happened. I told here I don't know anything what happened except that they got shot and I guess I must have did it."

▆ Generally, inadmissible evidence erroneously admitted will not require reversal if the accused testifies about the same facts and admits the truth of the testimony to which he originally objected. See *Cameron v. State*, Tex.Cr.App., 530 S.W.2d 841; *Washington v. State*, Tex.Cr.App., 484 S.W.2d 721. However, if a defendant introduces rebutting evidence to meet, destroy, or explain the improperly admitted evidence, he does not waive his objection to the evidence. See *Nicholas v. State*, Tex. Cr.App., 502 S.W.2d 169. In the instant case, appellant does not attempt to "meet, destroy, or explain" the testimony elicited from the nurses, but states that the testimony was a true rendition of what he stated on the date in question. Appellant only explained in his testimony at trial that he no longer believed that he shot both women.

Likewise, we find in the record that appellant's wife testified that after she questioned appellant concerning the condition of his sister he replied, "I guess I shot her too." No objection was made by appellant.

▆ Any error in admission of evidence is waived if the same evidence is admitted elsewhere in trial without objection. See *Davis v. State*, Tex.Cr.App., 516 S.W.2d 157.

In a related ground of error, appellant contends that he was deprived of a fair and impartial trial because of prejudicial comments made by the trial court concerning the weight of certain evidence.

The record shows that a discussion between counsel and the trial court was had

before the jury regarding the admissibility into evidence of certain admissions made by appellant. It appears that appellant was attempting to show that Griffin was a police officer and had restrained appellant. Appellant's counsel questioned Griffin concerning a citizen's arrest and whether Griffin would have made a citizen's arrest had appellant "really tried to do anything." The prosecutor objected, stating that there had been no citizen's arrest and that Griffin had related that he was not employed as a policeman at the time in question. The following then transpired:

"MR. LOVETT: We're just simply trying to determine whether this man placed Mr. Jackson under any restraint. It was the result of a legal arrest, whether he says it was an arrest or not.

"THE COURT: Mr. Lovett, the man has never indicated that he put his hand on the defendant to restrain him in any way. He has testified that he is not a police officer. He testified that he did not make an arrest and therefore, there is— apparently, he hasn't made an arrest. Now I think the question is would he have made one is speculative.

"MR. LOVETT: I most respectfully make this objection. I don't want the court to misunderstand. But I do respectfully object to the court making remarks in the presence of the jury that there has been no arrest. The reason is that I believe that that would be perhaps a question of fact which the jury itself may have to resolve and I believe that would amount to a comment on the weight of the evidence by the court.

"THE COURT: All right. Ladies and gentlemen, you are not to consider any remarks that the court has made in attempting to rule on the evidence and the objections in this matter. I will sustain the State's objection to the evidence without further comment."

■ Article 38.05, V.A.C.C.P. prohibits a trial judge, when ruling upon the admissibility of the evidence, from discussing or commenting upon the weight of the evidence or its bearing in the case. To constitute reversible error, the comment of the court on the evidence must be such that is reasonably calculated to prejudice the defendant's rights by injuring him or by benefiting the State. *Barnes v. State*, Tex.Cr. App., 503 S.W.2d 267; *Barber v. State*, Tex. Cr.App., 511 S.W.2d 937.

■ Here, evidence concerning whether an arrest had been made by Griffin would only have been material to the jury had issues been before them regarding the search and an oral confession. As heretofore noted, reversible error is not shown in the court failing to submit such issues to the jury. Further, the trial judge instructed the jury to disregard any comments made by him. See *Lewis v. State*, Tex.Cr. App., 503 S.W.2d 806.

The comments did not benefit the State or prejudice the appellant. No reversible error is shown.

Appellant next contends that the trial court erred in refusing to charge on the law of circumstantial evidence.

■ As mentioned previously, appellant made admissions to nurses on duty at the hospital and his wife that he shot both women. A charge on circumstantial evidence need not be given where there is in evidence an admission or confession by the accused. *Corbett v. State*, Tex.Cr.App., 493 S.W.2d 940; *Hurd v. State*, Tex.Cr.App., 513 S.W.2d 936, and the numerous cases cited therein.

Appellant next contends that the trial court erred in failing to instruct the jury regarding involuntary manslaughter and criminal negligence as requested by appellant.

■ It is well settled that if facts are elicited during trial that raise an issue and a charge on the issue is properly requested, then a charge on the issue must be given. See *Day v. State*, Tex.Cr.App., 532 S.W.2d 302, and cases there cited. An accused's own testimony is sufficient to raise an issue. See *Day v. State*, supra.

▉ Involuntary manslaughter is defined to be a reckless[2] killing. See V.T.C.A., Penal Code, Sec. 19.05. To be convicted for criminal negligence, an accused must cause the death of an individual by criminal negligence.[3] See V.T.C.A., Penal Code, Sec. 19.07.

In the instant case, appellant testified that he intended to scare his wife with the pistol and it went off and his wife was wounded. Although appellant testified that he did not think that he shot the deceased, it is evident two shots were fired. One witness heard two shots fired, two spent cartridges were discovered in the gun, a bullet was recovered from each woman, and expert testimony showed the angle of trajectory to be such that both women could not have been hit by the same bullet. The record reflects that appellant's wife was in front of him when the gun went off and the deceased was behind him. Appellant made admissions that he shot both women.

▉ A pistol is a deadly weapon per se, and when used by a defendant an intent to kill is presumed. See *Brooks v. State*, 548 S.W.2d 680 (1977); *Ruiz v. State*, Tex.Cr.App., 523 S.W.2d 691; *Thompson v. State*, Tex.Cr.App., 521 S.W.2d 621. In the instant case, we find no evidence to refute this presumption.

▉ Appellant's testimony that he did not think that he shot the deceased does not raise an issue of whether appellant was reckless or criminally negligent in causing the death of the deceased. Furthermore, just because appellant's wife's wound might have been caused by reckless conduct, we cannot impute this conduct to the shooting of the deceased where the record reflects that two shots were fired, a bullet was recovered from each of the victims, and the deceased was standing behind the appellant when appellant's wife was wounded.

In *Brooks v. State*, supra, the defendant testified that to keep the deceased from killing him with a pistol he struggled with the deceased to get possession of the pistol and that, during the struggle, the pistol was unintentionally pointed and fired in the direction of the deceased. We stated in *Brooks*, supra:

"When we attempt to apply the definition of recklessly found in the new Penal Code, we can find no evidence that the appellant acted in a reckless manner; i. e., there is no evidence that the appellant was aware of, but consciously disregarded a substantial and unjustifiable risk that circumstances existed or the result would occur with respect to circumstances surrounding his conduct or the results of his conduct. The trial court did not err in refusing to submit to the jury the instruction on the law of involuntary manslaughter."

In the instant case, unlike the facts in *Brooks*, supra, we find absolutely no evidence to show the circumstances in which the deceased was killed. It follows that we find no evidence that appellant acted in a reckless or criminally negligent manner. Finding no evidence to support the requested instructions, we hold the trial court did not err in refusing to charge on involuntary manslaughter and criminal negligence.

**2.** V.T.C.A., Penal Code, Sec. 6.03(c), recites:
"A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

**3.** V.T.C.A., Penal Code, Sec. 6.03(d), recites:
"A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all circumstances as viewed from the actor's standpoint."

Lastly, appellant contends that the trial court erred in denying his motion for new trial because of jury misconduct. It appears that one of the jurors at appellant's trial, Jimmie Davidson, was on probation for misdemeanor DWI at the time of the trial and was in violation of such probation in that he had not paid his fine. It further appears that Davidson's probation officer was in the courtroom during part of the trial. Appellant urges that these circumstances exerted pressure on Davidson to favor the State.

Davidson was not disqualified under Arts. 35.12, 35.16, or 35.19, V.A.C.C.P. If Davidson was subject to a challenge for cause under Arts. 35.16(a)(8) and (9) on grounds that he was biased against appellant or had formed a conclusion as to appellant's guilt, it was incumbent upon appellant to establish these facts on voir dire. The failure of appellant to so inquire during the voir dire of the jury panel and present a challenge for cause waives any ground of error regarding the matter. See *Mangum v. State*, Tex.Cr.App., 493 S.W.2d 798; *Mabou v. State*, Tex.Cr.App., 429 S.W.2d 891.

Davidson was not called at the motion for new trial. Gary Clayton, Davidson's probation officer, testified that he exerted no pressure on Davidson. We cannot speculate as to the prejudice, if any, of the juror in favor of or against appellant. The ground of error is overruled.

The judgment is affirmed.

Opinion approved by the Court.