Opinion issued July 22, 2004



In The

# Court of Appeals
For The
# First District of Texas

_____

NO. 01-03-00406-CR

_____

**DEON LEWIS PETERSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 183rd District Court
Harris County, Texas
Trial Court Cause No. 914922**

## MEMORANDUM OPINION

The State charged appellant Deon Lewis Peterson with aggravated robbery.

The indictment included a punishment enhancement paragraph alleging that Peterson

previously was convicted of felony possession of a controlled substance. Peterson pleaded not guilty to the aggravated robbery, and true to the punishment enhancement paragraph. A jury convicted Peterson, found the enhancement paragraph true, and sentenced Peterson to 22 years confinement.

Peterson challenges the legal and factual sufficiency of the evidence supporting his conviction. He further contends that the trial court erred in allowing a biased juror to serve on the jury. We affirm.

## Background

In June 2002, Giang Pham owned the Lucky Game Room, a video arcade located in a shopping center on Maxey Road in Houston, Texas. Pham's patrons typically arrived after 5 p.m. On June 12, Pham opened the Lucky Game Room at approximately 1 p.m. Peterson entered the room approximately 10 minutes later.

Pham testified that Peterson was the first individual to enter the Lucky Game Room on June 12. Peterson talked on a cell phone, looked around the arcade, and scanned the ceiling. Pham assumed that Peterson was looking for a security camera and determining whether he was the only patron in the Lucky Game Room. Pham became nervous and decided, "If he do something else I go ahead and call the police." Peterson touched Pham's ping-pong case, and opened a refrigerator that contained soft drinks. Pham provided soft drinks to his customers at no charge and, when Peterson looked inside, Pham said, "Go ahead and take one, there's no charge."

2

Peterson continued to talk on his cell phone, took a soft drink, and approached Pham at the counter. He placed the soft drink on the counter and began to look at, and behind, the counter. Using his cell phone, Peterson stood at the counter for approximately five minutes. Pham testified that at that point, he called "David," a Houston Police Department police officer. Pham explained:

> He look around, he touch my ping-pong case and he open my refrigerator. And I think why he do that. Usually my customers come in and sign in and play games. And I think, you know, this guy is no good so I go and pick the phone and call to the police.

Pham asked David to immediately come to the Lucky Game Room. Peterson asked Pham who he had called, and Pham informed Peterson that he had called the police.

Pham testified that when he informed Peterson that he had called the police, Peterson placed his hand on a gun he had concealed in his back pocket and informed Pham, "call him not to come right now or you get in big trouble." Pham testified that "I know that I saw exactly he hold in the pocket," and that it "Must be a gun . . . I saw the clip." Although Peterson did not remove the gun from his pocket, Pham saw "about two inches" of "the very end of the gun" protruding from Peterson's back pocket when Peterson turned around to show it to him. Pham demonstrated how Peterson carried the gun with a similar gun and pair of pants, and testified that it was not possible that he could be confusing Peterson's cell phone with the gun. Pham thought that Peterson purposefully turned around in a manner so as to display the firearm, and testified that Peterson told him that he was a "New York gangster" in

3

order to scare him.

Pham further testified that Peterson, while holding the handle of the firearm in his back pocket, told him that "he need some money." Pham gave Peterson $5.00 from his pocket, whereupon Peterson, who was still holding the gun in his back pocket, informed him that he wanted "all the money" and requested that Pham show him the contents of his pockets. Pham informed Peterson that he was not the owner of the Lucky Game Room, that he did not have any additional money with him, and that he was waiting for the owner to arrive with money for making change. Pham told Peterson that he had money in his automobile, offered to retrieve it for him, and moved toward the front door. Peterson, with his hand still in his back pocket on the firearm, blocked Pham's exit. Pham begged Peterson to allow him to leave, and promised him that he would give him the money that he had in his vehicle. Pham eventually convinced Peterson to allow him to leave, but accompanied Pham as he walked toward his vehicle. Pham testified that he kept his hands in his pockets while talking with Peterson, and that Peterson tugged on and grabbed his pockets and asked, "what's in here, telephone?"

While in the parking lot, Pham informed Peterson that he would not retrieve the money inside his car. Peterson then told Pham to accompany him back to the Lucky Game Room, but Pham refused. Peterson again groped Pham's pocket, whereupon Pham ran to a nearby business and requested help. Peterson fled the

4

scene. Police officer Gerald Reese arrived. Moments after he released Peterson's description over the radio, Peterson was spotted running to a nearby apartment complex. A woman allowed police to enter an apartment, and they apprehended Peterson in a bedroom hiding under the bed covers.

Pham testified that Peterson was in the Lucky Game Room for approximately 20 minutes. He acknowledged that Peterson had not asked him for money or placed his hand on the gun in his back pocket until after Pham called David. Pham acknowledged that his "regular customers" who have a "good relationship" with him regularly remove soft drinks from his refrigerator, but that Peterson was not one of his regular customers, and that he therefore expected Peterson to ask before opening the refrigerator. Pham acknowledged that Peterson never removed the gun from his back pocket. The police recovered neither the firearm that Pham testified Peterson used during the robbery, nor Peterson's cell phone.

## The Legal and Factual Sufficiency of the Evidence

Peterson contends that the evidence is legally and factually insufficient to support his conviction, because: (1) no evidence exists that he possessed a firearm, or threatened imminent bodily injury while a theft was occurring; and (2) Pham's contention that he felt threatened was objectively unreasonable. Peterson also contends that the evidence is factually insufficient because: (1) the jury debated whether the object Pham thought to be a firearm was a cell phone; (2) telephone

records prove that Peterson was on the telephone for 18 of the 20 minutes that he was present in the Lucky Game Room; and (3) Pham, who spoke "but clearly was not fluent in English," misunderstood Peterson who, according to his mother's testimony, "used slang with everyone except his mother."

In determining whether a conviction is supported by legally sufficient evidence, we view the evidence in the light most favorable to the prosecution, and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); *Howley v. State*, 943 S.W.2d 152, 155 (Tex. App.—Houston [1st Dist.] 1997, no pet.). We consider all of the evidence presented at trial, but we do not re-weigh the evidence or substitute our judgment for that of the jury. *King*, 29 S.W.3d at 562. The jury, as the trier of fact, is the sole judge of the credibility of the witnesses. *Obigbo v. State*, 6 S.W.3d 299, 304 (Tex. App.—Dallas 1999, pet. ref'd).

We review the factual sufficiency of the evidence by reviewing all of the evidence neutrally, not in a light most favorable to the prosecution, and consider whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Zuniga v. State,* No. 539-02, 2004 WL 840786, at *7 (Tex. Crim. App. Apr. 21, 2004); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In a factual sufficiency review, we may not substitute our own judgment for that of the finder of fact. *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996).

A person commits a robbery if, in the course of committing theft, and with intent to obtain or maintain control of the property, that person intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL. CODE ANN. § 29.02 (Vernon 2003). A person commits a theft if that person unlawfully appropriates property with intent to deprive the owner of that property. TEX. PENAL. CODE ANN. § 31.03 (Vernon Supp. 2004). An aggravated robbery occurs if, while committing a robbery, a person uses or exhibits a deadly weapon. TEX. PENAL. CODE ANN. § 29.03 (Vernon 2003). A deadly weapon is a firearm or anything manifestly designed, made, or adapted for the purposes of inflicting death or serious bodily injury; or anything that in the manner of use or intended use is capable of causing death or serious bodily injury. TEX. PENAL. CODE ANN. § 1.07(a)(17) (Vernon Supp. 2004).

We conclude that a rational trier of fact could have found the essential elements of aggravated robbery beyond a reasonable doubt. We therefore hold that the evidence is legally sufficient to support Peterson's aggravated robbery conviction. *See King*, 29 S.W.3d at 562. First, the jury heard evidence that Peterson took $5.00 from Pham, asked him to empty his pockets, and accompanied Pham to his car, intending to take more money. With regard to the latter, the actual taking of property is not an essential element of the offense of robbery. *Ex parte Hawkins*, 6 S.W.3d 554, 560 (Tex. Crim. App. 1999); *see also Fortenberry v. State*, 889 S.W.2d 634, 637

7

(Tex. App.—Houston [14th Dist.] 1995 pet. ref'd) (fact that appellant unable to complete theft insufficient to negate criminal intent to commit aggravated robbery).

Second, the jury heard evidence that Peterson exposed two inches of the handle of a firearm in connection with detaining Pham in the Lucky Game Room, demanded money, that Pham empty his pockets, and that he call and tell the police not to come. This conduct threatened or placed Pham in fear of imminent bodily injury or death. The State thus presented the jury with evidence inconsistent with Peterson's contention that Pham's fear had no reasonable basis. Peterson moreover informed Pham that he wanted "all the money" and demanded that Pham show him the contents of his pockets. Peterson grabbed Pham's pockets and asked him, "what's in here, telephone?" When Pham attempted to leave the Lucky Game Room, Peterson blocked Pham's exit, and did not allow Pham to exit until after Pham begged and promised Peterson that he would go to his car and retrieve money.

Third, contrary to Peterson's contention that Pham "saw only what he guessed could be the end of a gun," Pham repeatedly testified that Peterson had a gun in his pocket, that he saw approximately two inches of its handle protruding from Peterson's back pocket, and that Peterson intentionally displayed it to him. Although Peterson did not remove the firearm from his pocket and point it at Pham, the display of a deadly weapon constitutes a threat of imminent harm. *Robinson v. State*, 596 S.W.2d 130, 133 n.7 (Tex. Crim. App. 1980). We conclude that a rational jury could have

8

found from this evidence that Peterson committed the offense of aggravated robbery.

Furthermore, with regard to factual sufficiency, we conclude that the jury was rationally justified in finding guilt beyond a reasonable doubt. Peterson contends that: (1) Pham saw a cell phone, not a firearm; and (2) the jury concluded that he had a cell phone and not a firearm. Peterson's mother testified that Peterson "usually" carried his cell phone in his back pocket, that Peterson does not own a firearm, and that she has never before seen him with a firearm. As discussed above, however, Pham testified that Peterson held a firearm in his back pocket, and that he knew "exactly" what he saw; he "saw the clip." Pham further testified that it was not possible that he could have confused Peterson's cell phone for a gun, and Pham demonstrated Peterson's actions. The jury had the benefit of observing Pham's demeanor and credibility, and the question indicates a focus on the evidence presented.

Peterson contends that a note that the jury sent to the trial court asking, "could aggravated robbery occur if defendant was using [a] cell phone portraying it as a gun to make Mr. Pham fear for his life?" means that the jury so concluded. The trial court's charge, however, required the jury to find that Peterson displayed a firearm. Moreover, in response to the jury's question, the trial court instructed the jury to follow the law it had already given them. We presume that the jury followed the trial court's instructions in the manner presented. *See Colburn v. State*, 966 S.W.2d 511,

9

520 (Tex. Crim. App. 1998).

Peterson also contends that because of his use of slang and Pham's "lack of fluency" in the English language, "it is difficult to discern from the record whether [he] was begging or demanding money from [Pham]," and that this discrepancy "was a good basis for miscommunication, distrust, and mistakes." He notes that Peterson spoke on the telephone for 18 of the 20 minutes that he was in the Lucky Game Room, that Pham was not a credible witness, and that Peterson's behavior in the Lucky Game Room is attributable to his failure to pay attention to his surroundings. Pham testified that the Lucky Game Room attracted a group of patrons of different ethnic backgrounds and that he communicated with his patrons in English. The jury had the benefit of observing Pham at trial, and was entitled to judge Pham's credibility and to believe all, some, or none of his testimony. *See Gowans v. State*, 995 S.W.2d 787, 789 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd); *Williams v. State*, 692 S.W.2d 671, 676 (Tex. Crim. App. 1984). Here, the jury found Pham to be a credible witness and chose to believe his version of the events that transpired on the day of the robbery. We conclude that the jury's determination of guilt is supported by factually sufficient evidence.

## Biased Juror

Peterson next contends that the trial court erred in permitting Prospective Juror Number 40 to serve on the jury, because the prospective juror was biased against the

law applicable to the case. *See* TEX. CODE CRIM. PROC. ANN. art. 35.16(c) (Vernon Supp. 2004).[1]

During voir dire, defense counsel explained to the venire panel that the State had to prove Peterson's guilt beyond a reasonable doubt, and that Peterson did not have to present any evidence of his innocence to be acquitted. Prospective Juror Number 40 responded to defense counsel's statement by explaining, "I agree that you don't have to prove anything, but you would have to rebut any evidence presented. And I think that's a sticking point."

If a prospective juror is subject to a challenge for cause, a party must seek to excuse that person by asserting a challenge for cause. *See Jackson v. State*, 548 S.W.2d 685, 697 (Tex. Crim. App. 1977) (failure to assert challenge for cause under article 35.16 on basis that prospective juror was biased waived any error). At the conclusion of voir dire, Peterson's trial counsel exercised all of Peterson's allotted peremptory challenges on other prospective jurors, and did not challenge Prospective

---

[1] Article 35.16(c) provides as follows:
(c) A challenge for cause may be made by the defense for any of the following reasons:
1. That he is related within the third degree of consanguinity or affinity, as determined under Chapter 573, Government Code, to the person injured by the commission of the offense, or to any prosecutor in the case; and
2. That he has a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely, either as a defense to some phase of the offense for which the defendant is being prosecuted or as a mitigation thereof or of the punishment therefor.

TEX. CODE CRIM. PROC. ANN. art. 35.16(c).

Juror Number 40 for cause. The trial court called the numbers of the venire members who were to serve as jurors, and allowed both Peterson and the State another opportunity to object to the jury. Peterson represented that he had no objection. Because Peterson did not challenge Prospective Juror Number 40 for cause, we conclude that he has not preserved error for review. TEX. R. APP. P. 33.1(a); *see also Jackson,* 548 S.W.2d at 697; *Jacobs v. State,* 787 S.W.2d 397, 405 (Tex. Crim. App. 1990) (preservation of error on challenge for cause requires: (1) a clear specific challenge for cause; (2) use of a peremptory challenge on challenged venire member; (3) exhaustion of remaining peremptory challenges; (4) unsuccessful request that trial court allow additional peremptory challenge; and (5) informing trial court that objectionable juror has been seated and defense would have exercised a peremptory challenge had trial court given additional one).

## Conclusion

We conclude that the evidence is legally and factually sufficient to support Peterson's aggravated robbery conviction. We further conclude that Peterson waived any challenge to Prospective Juror Number 40 by not challenging that juror for cause. We therefore affirm the trial court's judgment.

Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Bland and Oakley.[2]

Do not publish. TEX. R. APP. P. 47.2(b).

---

[2] The Honorable Bruce D. Oakley, Judge of the 234th State District Court of Harris County, Texas, participating by assignment. *See* TEX. GOV'T CODE ANN. § 74.003(h) (Vernon Supp. 2004).