COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-08-124-CR

 

 

ROBERT ALLEN BYRD                                                          APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

              FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                          I.  INTRODUCTION

Appellant Robert Allen Byrd appeals his
conviction for engaging in organized criminal activity.[2]  In two points, Appellant argues that the
evidence is insufficient to support the jury=s
verdict and that the trial court erred by overruling his motion for change of
venue.  We will affirm.








                                          II.  BACKGROUND

Appellant, a resident of Johnson County, is a
confessed former high-ranking captain of a white-supremacist group who call
themselves the Aryan Circle.  In May
2006, Appellant had gone to Hood County, Texas, to Ahold court@[3] on a
fellow Aryan Circle member, Shawn Goodrich. 
The court involved allegations surrounding Goodrich=s
extensive use of methamphetamine and Goodrich being behind on his payments for
the illegal drug.

After having conducted court regarding Goodrich,
Appellant, Johnny Freeman, Daniel RoofCa
lieutenant in the Aryan Circle, Jennifer Perez, and Goodrich went to a Granbury
convenience store to meet Ruth Adkins and her son James Newell.  Adkins was upset that her daughter, Jennifer
Newell, had begun shooting methamphetamine with her boyfriend, James
Padgett.  Adkins believed that Padgett
would get her daughter to use the drug so that she would pass out and he would
then do Asexual
things@ with
her.








Shortly after this meeting, Appellant, Freeman,
Roof, Goodrich, and Perez drove to Oak Trail Shores, a Granbury
subdivision.  On the way, Appellant
talked about going to Jennifer Newell and Padgett=s house
because Padgett was Aspinning Jennifer out.@[4]  When the group got to Padgett=s house,
Jennifer answered the door and told them that Padgett was not home, so the
group left.  On their way out of the Oak
Trail Shores neighborhood, they saw Padgett entering the gates and turned
around.  After stopping Padgett=s
vehicle, Appellant, Roof, and Freeman jumped out of the truck.  Appellant and Roof allegedly had knives with
them.  About five minutes later, the
three returned to the truck with blood on them and breathing heavily.  As they left the scene, Appellant used a
stuffed animal in the truck to wipe the blood off his arm and knife.  Roof cleaned his knife with beer.  They then threw the bloodied toy, as well as
the knives, out of the truck window.

As they left the scene, Freeman was allegedly
upset, saying that what had occurred Awas sloppy@ and
that the attack Awasn=t
suppose[d] to go down like that.@  Appellant replied, AIt=s all
right.  I got him.  We don=t have
nothing to worry about.@ 
Roof complained that he was able to Ado
nothing@ because
his knife was dull.  The group then drove
to Dallas, where they purchased new clothes at a Wal-Mart.  The three men changed their clothes at a
truck stop and discarded their bloody clothes into the truck stop=s trash
bin.








Freeman=s
girlfriend, Amber, returned home late that afternoon and found that Freeman was
not home.  She called several people,
including Adkins, looking for Freeman. 
Adkins told Amber that there had been a stabbing in Oak Trail Shores and
that the police thought Freeman was involved.  Shortly thereafter,
Adkins called Amber and asked her to meet her at Brazos River Acres.  Once there, Adkins told Amber that Freeman
wanted to meet them in Hillsboro, Texas.

Adkins and Amber drove to Hillsboro, where they
met Appellant and Freeman at a gas station. 
Amber noticed that the men were wearing different clothes than they had
been wearing earlier.  Adkins rented a
nearby motel room, where the four of them went to talk.

At trial, Amber testified that Appellant said he
had stabbed Padgett because God told him to and that he was freeing Jennifer
Newell from Padgett.  Appellant described
how it Afelt
good@ to stab
Padgett.  According to Amber, Freeman
appeared shocked while Appellant and Adkins appeared pleased.








Padgett was airlifted to Harris Methodist
Hospital in Fort Worth after the stabbing. 
Having suffered massive blood loss, he underwent surgery to repair
multiple stab wounds in his heart and his torso.  He was eventually transferred to a nursing
home facility, where he died of pneumonia nearly a year later.  The medical examiner listed Padgett=s cause
of death as complications from multiple stab wounds.

A Hood County grand jury indicted Appellant in
July 2007.  The indictment specifically
charged that Appellant, on May 6, 2006, Adid then
and there, with the intent to establish, maintain, or participate as a member
of a criminal street gang, commit Aggravated Assault by stabbing James Padgett
with a knife . . . .@  On March 27, 2008, a jury found Appellant
guilty of engaging in organized criminal activity.  The jury sentenced Appellant to ninety-nine
years in prison and assessed a $10,000.00 fine. 
This appeal followed.

                                           III.  DISCUSSION

A.       Sufficiency of the Evidence








In his first point, Appellant argues that the Aevidence
is insufficient to establish the elements of engaging in organized criminal
activity because only one crime was committed.@  Appellant does not specify whether his
challenge is to the legal sufficiency of the evidence or its factual
sufficiency, or both.  Although this
court has the authority to review factual sufficiency in criminal cases, we may
do so only if the issue is Aproperly
raised.@  Clewis v. State, 922 S.W.2d 126, 133
(Tex. Crim. App. 1996).  A factual
sufficiency point is properly raised only if it is specified in a separate
point, sets out the proper standard of review, and analyzes why the facts fall
short of that standard.  See id.; see
also Patterson v. State, 46 S.W.3d 294, 305 (Tex. App.CFort
Worth 2001, no pet.); Moon v. State, 44 S.W.3d 589, 593 (Tex. App.CFort
Worth 2001, pet. ref=d).  Appellant does not discuss in his brief a
separate point pertaining to factual sufficiency of the evidence, nor does he
discuss the applicable standard, analyze any disputed material facts, or
attempt to explain why the evidence supporting his conviction is factually
insufficient.  Because we construe this
point only as a challenge to the legal sufficiency of the evidence, we will
conduct only a legal sufficiency review. 
See Cardenas v. State, 30 S.W.3d 384, 386 n.2 (Tex. Crim. App.
2000) (conducting only a legal sufficiency review where defendant, despite
having requested A[i]n a single sentence at the
conclusion of his [sufficiency of the evidence] point of error . . . that [the
court] conduct a factual sufficiency review,@
otherwise made no reference to the factual sufficiency of the evidence nor the
applicable standard); Chavero v. State, 36 S.W.3d 688, 693 (Tex. App.CCorpus
Christi 2001, no pet.) (conducting only a legal sufficiency review where
defendant argued only that his Aconviction
should be vacated and a judgment of acquittal entered because there was
insufficient evidence to establish all of the necessary elements@ of the
offense but failed to reference factual sufficiency or the applicable standard
of review).








1.     Standard
of Review

In reviewing the legal sufficiency of the
evidence to support a conviction, we view all of the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007).

2.     Engaging
in Organized Criminal Activity

A person commits the offense of engaging in
organized criminal activity if, Awith the
intent to establish, maintain, or participate . . . as a member of a
criminal street gang,@ he commits or conspires to
commit one or more specified offenses, here, aggravated assault.  Tex. Penal Code Ann. ' 71.02(a)(1)
(Vernon Supp. 2008).  The Texas Penal
Code defines Acriminal street gang@ as Athree or
more persons having a common identifying sign or symbol or an identifiable
leadership who continuously or regularly associate in the commission of
criminal activities.@ 
Id. ' 71.01(d) (Vernon 2003).








Under the plain language of section 71.02(a), a
defendant is guilty of engaging in organized criminal activity when the State
proves the first elementCthat the defendant committed a
specific offense that is listed under that chapter, such as aggravated assault,
and the second elementCthat the defendant committed
that offense Awith the intent to establish,
maintain, or participate . . . as a member of a criminal street gang.@  Id. ' 71.02(a);
Curiel v. State, 243 S.W.3d 10, 16 (Tex. App.CHouston
[1st Dist.] 2007, pet. ref=d).

Appellant argues that the evidence is
insufficient to prove the elements of engaging in organized criminal activity Abecause
only one crime was committed.@  Appellant then details the evidence
demonstrating the aggravated assault on Padgett.  Appellant concludes that the evidence Aindicates
at best that one criminal activity occurred as a group activity, and therefore
the evidence does not support the conviction.@  Thus, we interpret Appellant=s
sufficiency of the evidence argument as challenging the second element onlyCwhether
he committed an offense Awith the intent to establish,
maintain, or participate . . . as a member of a criminal street gang,@ and he
does not challenge the first element, whether he committed the underlying
offense of aggravated assault.








The evidence shows that the assault on Padgett
was retaliation for Padgett=s having
gotten James Newell=s sister, Jennifer, addicted to
methamphetamine andCby Appellant=s own
admissionCfor Padgett=s having
disrespected the Aryan Circle gang.  The
State presented evidence that James Newell, FreemanCone of
the five-member group that sought out and found PadgettCand
Appellant share white-supremacist views. 
The State also presented evidence that Appellant was a high-ranking
official of the Aryan Circle, a gang that regularly dealt in illegal narcotics,
weapons, racketeering, and identify theft. 
There was testimony presented at trial by a Texas Department of Criminal
Justice officer that it is common for Aryan Circle gang members to take care of
other gang members= families.

Appellant confirmed that he was a captain in the
Aryan Circle.  Roof, the other attacker,
was identified as a lieutenant in the Aryan Circle.  Appellant also confirmed that Goodrich, one
of the group that sought out Padgett the night he was assaulted, was also a
member of the Aryan Circle.  Appellant
stated that his responsibility as captain was to make sure all members followed
the gang=s
guidelines.  Members were expected to
obey his orders.  Appellant admitted that
his gang regularly assaulted members who desired to get in or out of the
gang.  Although he denied that the gang
sanctioned drug sales, Appellant admitted that Goodrich, James Newell, and
Freeman were all involved in the drug trade.








Aaron Jostmeyer, Appellant=s
friend, testified that in the summer of 2006, Appellant told him that he was
worried that the police might be looking for him because of Aa hit@ he had
done in Hood County.  Jostmeyer said that
Appellant told him the Ahit@ was in
retaliation for Padgett=s getting Agirls
strung out on heroin and raping them.@  Jostmeyer stated that Appellant told him that
he had apologized to Jennifer NewellCJames
Newell=s sister
and Padgett=s girlfriendCfor
stabbing Padgett but that it Ahad to
be done.@

Viewing this evidence in the light most favorable
to the verdict, we conclude that a rational trier of fact could have determined
beyond a reasonable doubt that Appellant committed the underlying aggravated
assault on Padgett with the intent to participate as a member of the criminal
street gang, Aryan Circle.  See
Tex. Penal Code Ann. ' 71.02(a); Roy v. State,
997 S.W.2d 863, 869 (Tex. App.CFort
Worth 1999, pet. ref=d).  We overrule Appellant=s first
point.

B.     Motion
for Change of Venue

In his second point, Appellant argues that the
trial court erred in overruling his motion for change of venue.  We disagree.








Section 31.03(a) of the code of criminal
procedure provides that a change of venue may be granted if the defendant
establishes that Athere exists in the county where
the prosecution is commenced so great a prejudice against him that he cannot
obtain a fair and impartial trial.@  Tex. Code Crim. Proc. Ann. art. 31.03(a)
(Vernon 2006).  To justify a change of
venue based upon media attention, a defendant must show that the publicity was
pervasive, prejudicial, and inflammatory. 
Salazar v. State, 38 S.W.3d 141, 150 (Tex. Crim. App. 2001).  Widespread publicity, by itself, is not
considered inherently prejudicial.  See
Gonzalez v. State, 222 S.W.3d 446, 449 (Tex. Crim. App. 2007); Bell v.
State, 938 S.W.2d 35, 46 (Tex. Crim. App. 1996).  Indeed, even extensive knowledge of the case
or defendant in the community as a result of pretrial publicity is not sufficient
if there is not also some showing of prejudicial or inflammatory coverage.  Faulder v. State, 745 S.W.2d 327, 338B39 (Tex.
Crim. App. 1987).  The mere existence of
media attention or publicity is not enough, alone, to merit a change of
venue.  Bell, 938 S.W.2d at 46.

The standard of review on appeal from a ruling on
a motion for change of venue is abuse of discretion.  Gonzalez, 222 S.W.3d at 449.  If the trial court=s
decision concerning a motion for a change of venue falls within the zone of
reasonable disagreement, it will be upheld. 
See Narvaiz v. State, 840 S.W.2d 415, 428 (Tex. Crim. App. 1992);
Ransom v. State, 920 S.W.2d 288, 299 (Tex. Crim. App. 1996) (op. on reh=g); Penry
v. State, 903 S.W.2d 715, 727 (Tex. Crim. App. 1995).  The two primary means of discerning whether
publicity is pervasive are a hearing on the motion to change venue and the voir
dire process.  Gonzalez, 222
S.W.3d at 449.  The trial court in this
case used both.








At the hearing, the State introduced two exhibitsCthe
affidavits of two Hood County citizens asserting that Appellant could receive a
fair trial.  Appellant introduced into
evidence a Hood County newspaper=s May
10, 2006 article regarding the stabbing of PadgettCwhich
does not mention AppellantCand
several other various newspaper articles referencing Appellant=s arrest
that mention Appellant by name.  But
there was no evidence presented of how many times these media reports were
circulated or how many people actually read these articles.  See id.  Appellant also introduced into evidence a DVD
copy of a program that ran on Granbury=s
educational access television channel after the stabbing had occurred, titled ADistrict
Judge Report.@ 
On this program, the trial judge is reported as having referred to
members of the Aryan Brotherhood as Abad
dudes@ and,
although never referring to Appellant by name, described one of the assailants
in this case as a Acold-blooded killer.@

Although this particular report might have
contained potentially inflammatory statements, Appellant failed to show that
the program pervaded the community or influenced the panelists.  In fact, as evidenced by answers in voir
dire, none of the panelists had watched the program containing the potentially
prejudicial interview.








Appellant argues that because the trial judge has
great influence in the community from which the jury panel is formed, Appellant
could not have received a fair trial. 
This conclusion, however, does not comport with existing case law.  See Gardner v. State, 733 S.W.2d 195,
204B05 (Tex.
Crim. App. 1987); see also Taylor v. State, 420 S.W.2d 601, 604 (Tex.
Crim. App. 1967), overruled on other grounds, Jackson v. State,
548 S.W.2d 685, 690 n.1 (Tex. Crim. App. 1977). 
In Gardner, the court of criminal appeals held that even though
fifteen of the seventy‑seven potential jurors were excused because they
had formed conclusions due to media coverage concerning the defendant=s guilt,
that, in and of itself, did not demonstrate the inability of the defendant to
be tried by an impartial jury.  Gardner,
733 S.W.2d at 204.  Likewise, in Taylor,
voir dire examination indicated that approximately thirty-nine of the 112
potential jurors questioned held an opinion that the defendant was guilty due
to media coverage.  Taylor, 420
S.W.2d at 604.  The court of criminal
appeals held in both cases that it was not an abuse of discretion by the trial
judge to deny the venue-change motions.  Id.
at 606; Gardner, 733 S.W.2d at 206.








In this case, the trial court received the
documentary evidence and reviewed the DVD before the pretrial hearing, and it
heard the responses of the jurors at voir dire. 
This court affords great deference to trial courts because a trial court
is in a better position to resolve issues involving testimony and other
questions of fact as a result of its ability to observe the demeanor of
witnesses and scrutinize their veracity face to face.  See Hathorn v. State, 848
S.W.2d 101, 109 (Tex. Crim. App. 1992) (holding that the trial judge must act
as factfinder with regard to issues presented on motion for change of
venue).  We see nothing in this record
other than the DVD to distinguish this case from numerous others in which a
trial court=s denial of a motion to change
venue has been upheld.  That sole
distinguishing characteristic is not sufficient to place beyond the zone of
reasonable disagreement the trial court=s
decision to believe the jury panel=s
members when they said they had not seen the program which contained the trial
judge=s
comments and to deny Appellant=s
motion.  We hold that the trial court did
not abuse its discretion in denying Appellant=s motion
and overrule his second point.

                                          IV.  CONCLUSION

Having overruled both of Appellant=s
points, we affirm the trial court=s
judgment.

 

PER
CURIAM

 

 

PANEL:  
WILLIAM BRIGHAM (Senior Justice, Retired, Sitting by Assignment); LIVINGSTON
and MCCOY, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  March
12, 2009











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code Ann. ' 71.02 (Vernon
2007).





[3]AHolding court@ refers to fellow Aryan
Circle members holding another member accountable for violating the Aryan
Circle=s Ahandbook@ and often involves
physical punishment for the offender.   





[4]ASpinning out@ is vernacular used to
describe the state of being high on methamphetamine to the point of
unconsciousness.